**In the Matter of INDIANA STATE BAR ASSOCIATION'S PETITION TO AUTHORIZE A PROGRAM GOVERNING INTEREST ON LAWYERS' TRUST ACCOUNTS.**

No. 49S00–9002–MS–147.

Supreme Court of Indiana.

Feb. 21, 1990.

PER CURIAM.

The Indiana State Bar Association, through its authorized personnel, has petitioned this Court to authorize a program governing interest on lawyers' trust accounts containing funds of the lawyers' clients. This is the third such request by the Indiana State Bar Association. Two previous requests were denied by this Court after extensive consideration. In the meantime, all forty-nine of the other states have adopted such a program in one form or another. For this reason we feel that, even though we continue to reject such a program because we find it to be in conflict with the duties, responsibilities and obligations of the legal profession and each lawyer member in this jurisdiction, it is incumbent on us to explain our reasoning.

Institution of the program would require us to amend (or perhaps bend?) the Rules for the Discipline of Attorneys and the Rules of Professional Conduct, and adopt rules for the administration and function of the program. The program seeks to be financed through interest earned on clients' funds held in a lawyer's trust account which are small deposits or larger amounts held for a short period of time, each client's fund of which generates no interest or such a small amount as to be impossible, or at least impractical, to account for since the cost of tracking or retrieving it would exceed the amount involved. The program provides for a lawyer to put all of his clients' funds falling into that category into one trust account which creates a corpus large enough to generate interest which is paid at regular intervals, usually quarterly, to the Bar Foundation, a non-profit organization, which in turn would be charged to dispense the funds to provide legal aid to the poor and finance other legal projects in the public interest. Funds of a sufficient amount or held for a period of time sufficient to accumulate interest would not be included in the fund. We cannot in good

conscience or the fulfillment of our duties and responsibilities endorse a program that would ignore the legal status and definition of the term "interest" as it relates to "principal." Moreover, we cannot and will not encourage lawyers in this state to violate their sacrosanct fiduciary duties to their clients.

It is well established that one who owns property owns the income that his property produces. In other words, that produced by the property becomes the property of the owner. This principle is so well established that it requires little, if any, citation to support it. This principle, when applied to the production of money in the form of interest, has been expressed in a manner familiar to most lawyers: "the interest follows the principal as the shadow follows the substance." This principle was expressed as early as 1809 by the United States Supreme Court in *Himely v. Rose* (1809), 9 U.S. (5 Cranch) 312, 317, 3 L.Ed. 111, 113 (Johnson, J., dissenting), in the oft-quoted maxim: "interest goes with the principal, as the fruit with the tree." Justice Roger DeBruler, authoring a majority opinion for this Court in *Northern Indiana Public Service Company v. Citizens Action Coalition of Indiana, Inc., et al.* (1989), Ind., 548 N.E.2d 153, 159, held that this expression:

> was grounded in the theory that held money fails to yield a return only in the rarest of circumstances. Therefore, where an ascertainable amount was owed to another, denying interest on the sum amounted to a double wrong by depriving the person owed of the increase to which he was justly entitled and by allowing the one holding the funds to profit from the use of funds that did not rightly belong to him. *Nashua & Lowell R. Corp. v. Boston & Lowell R. Corp.*, 61 F. 237, 251 (1st Cir.1894).

*See also Webb's Fabulous Pharmacies, Inc. v. Beckwith* (1980), 449 U.S. 155, 164, 101 S.Ct. 446, 452, 66 L.Ed.2d 358, 366 (interest earnings on interpleader fund deposited with Florida circuit court during litigation held to be "incidents of ownership of the fund itself and are property just as the fund itself is property"); *B & M Coal Corporation v. United Mine Workers* (1986), Ind., 501 N.E.2d 401, 404–05 (interest earned on appeal bond "must follow the principal and be distributed to the ultimate owner of the fund"), *cert. denied sub nom. Spencer Co. Clerk v. B & M Coal Corp.* (1987), 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839.

Indeed, lawyers commingling their clients' funds is the source of the greatest number of disciplinary proceedings brought in this state. For instance, in a disciplinary matter entitled *In the Matter of John A. Kesler* (1979), 272 Ind. 161, 397 N.E.2d 574, *cert. denied* (1980), 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34, Respondent Kesler took the assets of an estate amounting to twenty-seven thousand five-hundred dollars ($27,500.00) over a period of over two (2) years and sought to satisfy his obligation to his client by merely returning the principal amount of $27,500.00. Kesler refused to remit the interest produced by that money, which he put to his own use. This Court disbarred Kesler, and found he commingled client's funds with his own and treated the funds as his own. Moreover, Kesler misrepresented his acts to the court by way of a misleading petition for partial distribution in a decedent's estate. This Court held his diversion of income-producing assets from the estate to his personal benefit was misconduct warranting disbarment.

The first duty of a lawyer is to his client. References such as attorney, counsel, advocate, or other common titles have the same meaning, namely, a legal representative of another. Since we are speaking to lawyers, it is not necessary for us to outline in detail the necessary qualifications of professional education and standards of fitness and character required to become a lawyer. Pursuant to art. 7, § 4 of the Indiana Constitution, the Indiana Supreme Court is vested with the exclusive responsibility and duty to supervise the admission of applicants to the practice of law, supervise the discipline and disbarment of lawyers, and prohibit the unauthorized practice of law in the State of

Indiana. Pursuant to this implied and inherent power, this Court has enacted Rules for the Discipline of Attorneys and Rules of Professional Conduct. Again not finding the need to detail them by number, we need only state these rules are directed to strict standards of legal representation of clients, having at all times in mind the fiduciary relationship of the lawyer to the client to represent that client to the fullest measure of the lawyer's ability and the requirements of the law. Among these duties and responsibilities is the duty to at all times protect and preserve the rights and property of the client, to consult with the client and inform him of all actions taken by the attorney and the reason for taking them, and to keep confidential all matters communicated to the lawyer necessary for his representation but not contemplated to be made public. These are the duties of each lawyer, the goals of all professional legal groups composed of lawyers, and are of the utmost concern to all involved in our honorable profession including this Court in its supervisory capacity.

This is not to say a lawyer should ignore his duty to the profession and the public interest as a part of his professional responsibility. Indeed, in the preamble to the Rules of Professional Conduct, entitled "A Lawyer's Responsibilities," after exhorting lawyers to be concerned with their professional duties to clients, the preamble goes on to remind lawyers to recognize themselves as public citizens, to seek improvement of the law, administration of justice and quality of service rendered by the legal profession. The preamble states, in pertinent part:

> As a public citizen, a lawyer should seek improvement of the law, the administration of justice and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law and to strengthen legal education. A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance, and should therefore devote professional time and civic influence in their behalf. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest.

Surely these are goals recognized by any sincere and proud member of this profession including the members of this Court. However, regardless of how noble and well meaning the attainment of these goals might be, they must be secondary. In other words, the efforts of the legal profession to attain these goals must not transgress the rule of law and/or the duty to the client. The purpose behind these provisions is to have *lawyers* donate part of their time and effort toward *pro bono* activities. To suggest that members of the bar use interest money from their clients' funds to finance legal assistance to other indigent clients is nothing more than a transfer of wealth among clients. It must not be forgotten that neither the lawyers of this state, nor the Indiana Bar Association will be contributing to the continued support of *pro bono* activities such as legal clinics and the like. Rather, it is the clients, those who come to lawyers in this state for legal assistance, who will be the unknowing contributors to this fund. Adopting this program in the face of this dilemma could be done only by rationalizations with no more content and logic other than that the end justifies the means.

The purported justification for the adoption of interest on lawyers' trust accounts, commonly referred to as IOLTA, is often based on a change in federal laws regarding banking procedures. Frequently, lawyers hold clients' funds, including advances for costs and expenses, collections, and settlement proceeds, in relatively small amounts or for short periods of time pending their use on behalf of the client, which must be kept separate from the attorneys' own monies and must be available on demand. Historically, this meant attorneys had to use non-interest bearing accounts for such client deposits because federal law forbade the payment of interest on available-on-demand accounts. Within the past

decade, interest bearing checking accounts became authorized by the Consumer Checking Account Equity Act of 1980, 12 U.S.C. § 226, *amending* 12 U.S.C. § 1832. The Act permits payment of interest on negotiable order of withdrawal accounts commonly referred to as "NOW accounts" with certain restrictions. Only funds owned by individuals, certain charitable non-profit organizations, or public entities are allowed to receive interest on NOW checking accounts. Further, the Internal Revenue Service has ruled that the interest generated from the trust accounts would be taxable to the clients whose funds were used unless the decision of whether to participate in the program was removed from the clients. Rev.Rul. 81–209, *amplified by* Rev.Rul. 87–2, *see also* 26 C.F.R. 1.61–7. This ruling provides that interest earned in a plan where the client has no control over the decision to participate would be treated as reportable income only by the receiving entity, not the attorney nor his client so long as the funds to be commingled are nominal in amount and held for short duration. Incredibly, courts adopting IOLTA programs have accordingly provided that once an attorney decides to participate in an IOLTA program it is not necessary to inform his client, thereby eliminating any control the client may have over the earnings. It also became necessary to provide that the recipient of interest from the fund be only one entity, a not-for-profit organization such as the Bar Foundation.

Another justification for using clients' funds in the manner contemplated by an IOLTA program is that in the present form of using non-interest bearing accounts, the holding depository makes the interest on the money. The Honorable Thomas K. Milligan, writing on the subject of IOLTA in the October, 1983 issue of RES GESTAE, stated:

> Mention is made that the practical effect of the program is to shift the windfall benefits from many account holding depositories to a tax-exempt organization. These depositories furnish the facilities, personnel and services to allow the account to be kept, and at no charge or direct cost to the attorney or the client. The use of the funds by the depositories is the implied and accepted payment to such institutions for services rendered. A persuasive argument may be made that there is no windfall to the depositories which should be diverted to provide legal aid services.

Milligan, *IOLTA—another view*, RES GESTAE, October, 1983, at 194. The depositor eligibility requirements for NOW accounts as specified under 12 C.F.R. § 204.130(b), (e), appear to permit trust funds for individuals to be collectively held in an interest-bearing account in the lawyer's name. To the extent that this is possible, and reasonably practicable, attorneys may consider depositing such funds accordingly and including proportionate accrued interest with each remittance to the client. Present technology makes such calculations simple and inexpensive. Such a practice could eliminate virtually all non-interest bearing accounts for individual, non-corporate clients and would dramatically reduce the remaining funds ineligible for interest in a lawyer's NOW trust account. In this way, clients' money would be prudently kept and available interest would be earned and would reach the clients. This, of course, is where that interest money belongs and it is the duty of the lawyer and the legal profession to see to it that the client gets it if possible and practicable.

Nevertheless, we cannot base our opinion on any of these matters because we do not know facts sufficient to form an opinion nor have the petitioners made these facts sufficiently well known to us. We can say only that if there is a problem here regarding the manner in which banks operate as to lawyers' trust accounts, or any accounts, that problem may need to be addressed in some manner on its own merits. It does not justify this Court in using it as a reason to authorize the diversion of these funds to the not-for-profit organization suggested. It does not matter where, to whom, or for what purpose the funds would be diverted. The truth of the matter is that clients' funds would be diverted.

Some states have adopted voluntary programs giving discretion to the individual

lawyer or law firm to take part in it, such as Arkansas and Florida, while others have adopted mandatory programs such as Minnesota and California. *Compare In Re Interest on Lawyers' Trust Accounts* (1984), 283 Ark. 252, 675 S.W.2d 355 (client consent not an element of IOLTA program but participating attorneys and law firms must inform clients of participation in program), *modified* (1985), 286 Ark. 64, 689 S.W.2d 352 (notice to client on same day as client's money is first deposited, subsequent deposits of client's money may be made without repeating notice), *modified further* (1986), 289 Ark. 595, 709 S.W.2d 400 (notice to clients sufficient if conspicuously posted in law office), *modified further* (1987), 293 Ark. 511, 738 S.W.2d 803 (reducing the direct participation of the Arkansas Supreme Court Justices serving as members of the non-profit corporation board of directors) and *Matter of Interest on Trust Accounts* (1981), Fla., 402 So.2d 389, *with In Re Petition of Minnesota Bar Assn.* (1982), Minn., 332 N.W.2d 151 and *Carroll v. State Bar* (1985), 166 Cal.App.3d 1193, 213 Cal.Rptr. 305, *cert. denied sub nom., Chapman v. State Bar of California* (1985), 474 U.S. 848, 106 S.Ct. 142, 88 L.Ed.2d 118. Most of the programs leave it to the discretion of the individual attorney to determine which client's fund qualifies to be placed into the pooled trust account and recommend inclusion of trust monies received from any client or beneficial owner which are too small in amount or are reasonably expected to be held for too short a period of time to generate such amount as in the judgment of the attorney may be equivalent to the cost of administering an account for the benefit of the client or beneficial owner. Such provision is contained in enabling legislation by the Maryland Legislature, *see* 1982 Md.Laws chs. 829, 830, *codified at* Md.Ann.Code art. 10, § 44 et seq. (1982). Most states have made the same general ruling through their supreme courts, giving discretion to the individual attorney or law firm to decide which fund of the client should be put into the pool trust account and have further provided that no charge of ethical impropriety or other breach of professional conduct should attend an attorney's good faith exercise of judgment in that regard. *In Re Petition of Minnesota Bar Assn.,* 332 N.W.2d at 157–58 (citing *Matter of Interest on Trust Accounts* (1981), Fla., 402 So.2d 389, 394).

Lawyers must not be immune from disciplinary proceedings, especially when it comes to administering their clients' accounts. A lawyer's fiduciary duty to his client must be held in the highest regard and subject to strict scrutiny. To hold lawyers harmless when they handle so-called "nominal" funds or even greater funds held for a "short" period of time, is to give the members of the bar a free pass where none should exist. As Justice Boyd appropriately stated in his dissenting opinion to *Matter of Interest on Trust Accounts* (1981), Fla., 402 So.2d 389:

> The plan adopted by the Court today will put grave pressures on the attorney-client relationship. While it is recognized in a most general sense that lawyers should hold trust funds that are greater than nominal in amount or to be held for more than a short period of time in interest-bearing accounts, it is left to the unfettered and unguided discretion of attorneys to decide whether a particular client's property meets these criteria. Despite the attempt to exonerate in advance a lawyer's decision on this matter that may eventually be shown not to have been in the client's best interest, I predict that controversies and charges of ethical impropriety will arise from lawyers' participation in the program.

*Id.* at 399. It is the responsibility and the duty of this Court to set the rules for attorney discipline and see to it that they are applied in a just and evenhanded manner. Indiana lawyers deserve a clear mandate from this Court regarding the Rules of Professional Conduct. Therefore, in order to avoid any possible misunderstanding by the lawyers of this state, let there be no question that the IOLTA program currently promoted by the Indiana Bar Association violates our Rules for the Discipline of Attorneys and Rules of Professional Conduct.

Accordingly, the Indiana State Bar Association's petition to authorize a program governing interest on lawyers' trust accounts is hereby denied.

SHEPARD, C.J., dissents with separate opinion.

SHEPARD, Chief Justice, dissenting.

Fifty state supreme courts have examined the questions about which my colleagues write today and forty-nine of them have reached the opposite conclusion. The fact that Indiana stands alone on this issue does not mean that we are wrong, but it certainly does not prove we are right. Instead, I think it suggests that this might be a moment to heed the advice we often give to juries: "Re-examine your own views in light of the opinions of others."

Like most states, Indiana's Rules of Professional Responsibility are based on the model code of the American Bar Association. The reasons why the typical IOLTA system does not contravene the code are described well in the cases my colleagues cite from Arkansas, Minnesota, California, and Florida.

Let there be no mistake: interest is being earned on "non-interest-bearing" Indiana lawyer trust accounts. This Court can choose to continue directing that interest to the financial institutions holding the accounts or it can choose to direct it to help people too poor to hire counsel or to underprivileged or minority students seeking a legal education. The Indiana Bankers Association has informed this Court that its members do not object in principle to the legal profession's proposal that the interest benefit the disadvantaged. · This Court should not object, either.