WASHINGTON LEGAL FOUNDATION, Michael J. Mazzone, and William R. Summers

v.

TEXAS EQUAL ACCESS TO JUSTICE FOUNDATION, W. Frank Newton, Thomas R. Phillips, Raul A. Gonzalez, Jack Hightower, Nathan L. Hecht, Lloyd Doggett, John Cornyn, Bob Gammage, Craig T. Enoch and Rose Spector.

Civ. No. A–94–CA–081 JN.

United States District Court, W.D. Texas, Austin Division.

Jan. 19, 1995.

Steven W. Smith, Austin, TX, Daniel J. Popeo, Richard A. Samp, Washington Legal Foundation, Washington, DC, for Washington Legal Foundation, William R. Summers.

Michael J. Mazzone, pro se.

Darrell E. Jordan, Hughes & Luce, Dallas, TX, H. Robert Powell, Brittan L. Buchanan, Hughes & Luce, Harry G. Potter, III, Atty. General's Office, Nancy A. Trease, Asst. Atty. Gen., Austin, TX, for Texas Equal Access To Justice Foundation, W. Frank Newton, Thomas R. Phillips, Raul Gonzalez, Jack Hightower, Nathan L. Hecht, Lloyd Doggett, Bob Gammage, Craig T. Enoch, John Cornyn, Rose Spector.

### MEMORANDUM ORDER AND JUDGMENT

NOWLIN, District Judge.

Before the Court are the Motion for Summary Judgment filed by Defendant Texas Equal Access to Justice Foundation's ("TEAJF") and Defendant W. Frank Newton, its chair, the Motion for Summary Judgment filed by Defendants Thomas Phillips, Raul Gonzalez, Jack Hightower, Nathan Hecht, Lloyd Doggett, John Cornyn, Bob

Gammage, Craig Enoch, and Rose Spector ("the Supreme Court Defendants"),[1] and the Motion for Summary Judgment filed by the Plaintiffs, Washington Legal Foundation, William R. Summers, and Michael J. Mazzone. Also before the Court are the Responses addressing these motions, and the Replies addressing these Responses. Having considered these pleadings, the evidence submitted by the parties, the arguments of counsel, and the relevant law, the Court enters the following decision.

### NATURE OF THE CASE

The Plaintiffs in this action are the Washington Legal Foundation, a self-described non-profit public interest law and policy center, Michael Mazzone, a Texas resident and attorney licensed to practice by the Texas Bar, and William Summers, a Texas resident and consumer of legal services rendered by members of the Texas Bar. The Plaintiffs have filed this action pursuant to 42 U.S.C. § 1983, claiming that the Texas Interest on Lawyers' Trust Accounts ("IOLTA") Program, which is implemented and overseen by the Texas Equal Access to Justice Foundation ("TEAJF"), violates their rights under the First and Fifth Amendments of the United States Constitution. In addition to a declaratory judgment finding the IOLTA Program unconstitutional, the Plaintiffs seek injunctive relief prohibiting mandatory participation in the IOLTA Program, a return of the full amount of interest earned on Plaintiffs' money placed in IOLTA trust accounts, and an award of costs and attorneys' fees.

The Defendants have responded that the IOLTA Program neither effects a taking of the interest generated by the Program in violation of the Fifth Amendment, nor compels speech or involuntary association in violation of the First Amendment. The Defendants alternately contend that the IOLTA Program serves a significant state interest through means narrowly tailored to serve that interest, and, accordingly, there is no First Amendment violation. Finally, the Defendants contend that they are entitled to Eleventh Amendment immunity and that the TEAJF Defendants are not "persons" subject to suit under 42 U.S.C. § 1983.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To determine whether there are genuine fact issues, the court must first consult the applicable law to ascertain what issues are material. *Lavespere v. Niagara Machine & Tool Works,* 910 F.2d 167, 178 (5th Cir.1990), *cert. denied,* ___ U.S. ___, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993), *abrogated on other grounds; Little v. Liquid Air Corp.,* 37 F.3d 1069 (5th Cir.1994). Next, the court must review the evidence on those issues, viewing the facts and inferences in the light most favorable to the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the movant carries its burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Id.* at 324–25, 106 S.Ct. at 2553–54. While the Court must review the facts drawing all inferences most favorable to the party opposing the motion, *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986), that party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Factual controversies are resolved in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little,* 37 F.3d at 1075. However, the court does not, in the absence of any proof, assume the nonmoving party could or would prove the necessary facts. *Id.*

---

1. The Supreme Court Defendants' Motion for Summary Judgment simply adopts the positions taken by the TEAJF in its Motion for Summary Judgment.

## FACTUAL BACKGROUND

For the most part, the Parties concede that there is no dispute as to any material fact underlying this cause of action. The material facts relating to the operation of the Texas IOLTA Program are set out below.

Article XI of the Rules of the State Bar of Texas establishes the Texas Equal Access to Justice Program (hereinafter "the IOLTA Program"). Under this program, an attorney receiving client funds that are "nominal in amount" or "reasonably anticipated to be held for a short period of time" is required to place the funds in an unsegregated interest-bearing bank account. *See* State Bar Rules Governing Operation of Equal Access to Justice Program Rule 6. More specifically, the only funds eligible for the IOLTA Program are those which

> could not reasonably be expected to earn interest for the client or if the interest which might be earned on such funds is not likely to be sufficient to offset the cost of establishing and maintaining the account, service charges, accounting costs and tax reporting costs which would be incurred in attempting to obtain interest on such funds for the client. *Id.*

Under the IOLTA rules, when a client tenders a nominal amount of funds, or funds that will be held for only a short term, the lawyer is obligated to first make an initial determination, using his or her good faith judgment, of whether such funds can be deposited into an account that could reasonably be expected to earn an amount of interest sufficient to offset the cost of establishing and maintaining the account. *Id.* For purposes of the Plaintiffs' claims, it is important to stress that the only funds eligible for deposit in an IOLTA account are those that have no reasonable possibility of legally generating net interest income benefiting the client. Nothing prohibits an attorney from placing funds into a non-IOLTA account, if such funds are capable of generating net interest income to the client.[2]

Interest generated by these IOLTA accounts is to be paid to the Texas Equal Access to Justice Foundation, a non-profit corporation. *Id.*, Rule 9. The Foundation is charged with administering these funds, awarding them as grants to non-profit organizations that have a primary purpose of delivering legal services to low income persons. *Id.* Rules 10–12.[3] As evidenced by the TEAJF's annual reports, the beneficiary organizations provide a wide range of legal services, ranging from providing legal assistance to permanent resident aliens seeking naturalization, to documentation for Central American refugees seeking asylum, to legal services to death row inmates, to various AIDS organizations.[4]

---

2. The Plaintiffs contend that there is a genuine issue of material fact regarding whether the Texas IOLTA program permits Texas attorneys to employ the banking practice of sub-accounting as a means of generating net interest on deposited funds, and whether sub-accounting is a practical means of generating net interest for clients who deposit small amounts of money with their attorney. The Court finds that this issue of fact is not material and therefore does not preclude summary judgment. As conceded by the Defendants, any type of account that can earn interest beyond the costs of maintaining such account is beyond the scope of IOLTA's coverage. In other words, if sub-accounting or some other creative (but legal) banking practice or service permits nominal funds to earn net interest, the IOLTA Program and the Texas Bar do not prohibit Texas lawyers from making use of them, even if the result is the placement of these nominal funds in non-IOLTA accounts.

3. The professed goals of the IOLTA Program—meeting the unmet legal needs of indigent Texans—is indeed laudable. However the Court is conscious of Justice Holmes' warning that "(a) strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922).

4. One of the Plaintiffs' principal objections to the IOLTA Program is that some of the recipient organizations advocate positions to which the Plaintiffs are politically or ideologically opposed, such as expanding the rights of undocumented aliens or broadening the scope of anti-discrimination causes of action. In this regard, it bears noting that the IOLTA Rules prohibit the granting of funds to finance class actions, lawsuits against government entities (except to secure entitlements), or lobbying. *See* IOLTA Rule 15. However, the TEAJF apparently exercises little if any control or administrative influence over the out-of-court self-promotions and solicitations of some vocal attorneys or representatives of the donee entities.

Originally, the Texas IOLTA Program was voluntary. However, with only voluntary participation by Texas lawyers, the Program generated insufficient funds to meet the legal needs of indigent Texans. Consequently, in 1988, the Texas Supreme Court entered an order amending the State Bar Rules and converting the voluntary IOLTA program into the mandatory program presently in operation.[5]

### FIFTH AMENDMENT CLAIMS

The Plaintiffs allege that the IOLTA Program violates their Fifth Amendment rights by taking their property without just compensation. More specifically, the Plaintiffs allege both 1) that the Program effects a taking of the interest generated by the funds deposited into pooled IOLTA accounts, and 2) that the Program effects a taking of the "beneficial use" of their property by compelling them to deposit their funds in IOLTA accounts to generate income to support the Program.

■ The Fifth Amendment provides that private property shall not be taken for public use without just compensation. U.S. Const. amend. V.[6] For there to be a "taking" within the purview of the Fifth Amendment, the government must interfere "with interests that (are) sufficiently bound up with the reasonable expectations" of the plaintiff asserting the deprivation. *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 125, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978); *see also Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. at 161, 101 S.Ct. at 450 ("[A] mere unilateral expectation or an abstract need is not a property entitled to protection."). In other words, the Plaintiffs must be able to assert a cognizable property interest to raise a Fifth Amendment takings

claim. *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1001, 104 S.Ct. 2862, 2871, 81 L.Ed.2d 815 (1984). Whether such an interest exists is a question of state law. *See, e.g., Webb's*, 449 U.S. at 161, 101 S.Ct. at 450 ("[P]roperty interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....") (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

### Ownership of IOLTA–Derived Interest

Whether the Plaintiffs' can prevail on their Fifth Amendment claim depends in large part upon the characterization and ownership of the interest generated by the funds deposited in the IOLTA accounts—that is, whether they have a cognizable property interest in the IOLTA account interest. There is, of course, no dispute that the nominal funds given by Plaintiff Summers (the client) to Plaintiff Mazzone (his attorney), and which are deposited in Mazzone's IOLTA account, are at all times the property of Summers. The critical issue is to whom the proceeds (i.e., the interest earned) from such funds belong.[7]

The Plaintiffs contend that the client possesses property rights in the interest derived from IOLTA accounts. In support of this proposition, the Plaintiffs rely primarily upon the Supreme Court's decision in *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). *Webb's* involved a challenge to Florida statute which permitted a county to take as its own the interest accruing on an interpleader fund deposited in the registry of a county

---

**5.** The need for the provision of legal services to low income persons, and possibly for a mandatory *pro bono publico* program for lawyers, have been prominent issues recently facing both the Texas Bar and the Texas Supreme Court. *See, e.g., State Bar of Texas, et al. v. Maria Gomez, et al.*, 891 S.W.2d 243 (Tex.1994). The Court surmises that the well-documented failures of the Texas Bar to meet the legal needs of needy Texans through voluntary activities, as well as the clamor for mandatory *pro bono* by some sectors of the Texas Bar have played a significant role in

the implementation of the mandatory IOLTA Program presently under consideration.

**6.** This prohibition is made applicable to the states by the Fourteenth Amendment. *Webb's Fabulous Pharmacy, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980).

**7.** For purposes of this inquiry, it must at all times be kept in mind that, under the IOLTA Rules, the principal amounts at issue cannot be reasonably be expected to earn net interest on their own.

court. The interpleaded funds involved in *Webb's* generated interest in excess of $100,-000.00 The Supreme Court struck down the statute, holding that the earnings of interpleaded funds are incidents of ownership of the funds itself and are property in the Fifth Amendment context just as the interpleaded fund itself is property. *Webb's*, 449 U.S. at 160–65, 101 S.Ct. at 450–52. The rationale for the *Webb's* decision was based upon the "usual and general rule (that) any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal." 449 U.S. at 162, 101 S.Ct. at 451. On the basis of this holding, the Plaintiffs claim that they have a property interest in the interest earned on their nominal or short-term IOLTA funds.[8]

The principles enunciated in *Webb's* have been frequently invoked in challenges to IOLTA programs operating in other jurisdictions. Such invocations have been almost uniformly without success.[9]

In *Cone v. State Bar of Florida*, 819 F.2d 1002, 1004 (11th Cir.), *cert. denied* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987), the Eleventh Circuit evaluated the applicability of the holding in *Webb's* to a Fifth Amendment challenge to the Florida Bar's Interest on Trust Accounts ("IOTA") program.[10] The Eleventh Circuit found that, despite "superfi-cial similarities," the *Webb's* decision had no application in the IOTA context, due to the fact that the use of funds in an IOTA account had no net value. *Cone*, 819 F.2d at 1007. As the circumstances surrounding the funds and related banking practices could not lead to a legitimate expectation of interest exclusive of administrative costs and expenses, there could be no property interest for the state to appropriate via the collection of interest earned on pooled IOTA funds. *Id.* The court stated that there was no taking of property because, standing alone, the plaintiff's funds deposited in her attorney's IOTA (IOTA) account could not earn anything, and consequently, there could be no legitimate claim of entitlement. *Id.*

The holding and reasoning in *Cone* was cited with approval by the First Circuit in *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 975–76 (1st Cir.1993), a case involving another unsuccessful challenge to the Massachusetts Bar's IOLTA Program. The court also noted some "superficial similarities" between *Webb's* and the challenge to Massachusetts IOLTA program, but stressed a fundamental difference—namely, that the claimants in *Webb's* had property rights in the accrued net interest generated by the deposited funds, while in the IOLTA context, the property interests are essentially intangible. *Id.*

---

**8.** The Plaintiffs point out that the Supreme Court cited as an example of this "usual and general rule" *Sellers v. Harris County*, 483 S.W.2d 242 (Tex.1972), a decision of the Texas Supreme Court involving essentially the same operative facts as *Webb's*. In *Sellers*, the Texas Supreme Court ruled that the interest generated from $1,000,000 in insurance policy proceeds that were interpleaded into a county court's registry belonged to the owner of the principal and not the county, which claimed it was entitled to the interest pursuant to state statute. These proceeds generated interest in excess of $6,000.00 per month. *Sellers*, 483 S.W.2d at 242.

**9.** The supreme courts of all fifty states have examined the constitutionality, efficacy, and propriety of IOLTA programs. Forty-nine of these state courts have approved them in one form or another. The lone exception is the Indiana Supreme Court, which declined to adopt the state bar's proposed IOLTA program in a nonadversarial proceeding. *See In re Indiana State Bar Association's Petition to Authorize a Program Governing Interest on Lawyer's Trust Accounts*, 550 N.E.2d 311 (Ind.1990). However, contrary to the Plaintiffs' characterization of this opinion, the Indiana Supreme Court's refusal to adopt an IOLTA program was *not* predicated on constitutional grounds, but rather solely upon the court's view that the proposed IOLTA program was contrary to its interpretation of the ethical obligations of Indiana attorneys. *See Id.* at 315 ("[L]et there be no question that the IOLTA program currently promoted by the Indiana Bar Association violates our Rules for the Discipline of Attorney and Rules of Professional Conduct."). This Court declines to consider the ethical implications of the Texas IOLTA Program as such questions are more properly raised before the entity charged with regulating the conduct of members of the Texas Bar—namely, the Texas Supreme Court. *See* TEX.GOV.CODE ANN. § 81.011(c) (Vernon 1988).

**10.** The Florida Bar's Interest On Trust Accounts program is similar in both purpose and operation to the Texas IOLTA program. *See Cone*, 819 F.2d at 1003.

In accordance with the decision in *Cone,* the First Circuit held that the Plaintiffs' claimed property rights in both the interest generated by their funds and the beneficial use of the funds deposited in IOLTA accounts were insufficient to support a Fifth Amendment claim.

 The logic supporting both of these opinions is compelling. By definition, the only funds eligible for deposit in an IOLTA account are those which are incapable of earning net interest if deposited by themselves in an individual (non-pooled) account. Further, as stated above, for there to be a "taking" within the purview of the Fifth Amendment, the state action must interfere with interests that are sufficiently bound up with the reasonable expectations of the person asserting the deprivation. This "reasonable expectation" of a property interest is foreclosed by the very wording and operation of the rules governing the IOLTA program— that is, if there is any reasonable expectation of realizing net interest on a sum, the sum is exempted from IOLTA coverage. Simply put, the Court cannot conclude that the Plaintiff's have a property interest in interest proceeds that, but for the IOLTA Program, would never have been generated. Without such a property interest, the Plaintiffs are unable to state a viable Fifth Amendment claim pertaining to their ownership of the interest generated by funds placed in IOLTA accounts.

The Court finds that in the case of the Texas IOLTA Program (as in the case of the Florida and Massachusetts programs), it is only through combining small or short-term deposits that there is a possibility of creating interest. Put another way: such interest has been generated only by virtue of "an anomaly created by the practicalities of accounting, banking practices, and the ethical obligations of lawyers." *Washington Legal Foundation,* 993 F.2d at 980. It follows then that such interest income is not within the legitimate expectations of the owner of any one of the principal amounts. Accordingly, such amounts cannot be deemed to be appropriat-

ed by the IOLTA program.[11] In sum, the property rights of the Plaintiffs in this action and the claimants in *Webb's* are clearly different, and, as there is no property interest or expectation appropriated, there is no taking for Fifth Amendment purposes. Accordingly, the Court finds that the Plaintiffs have failed to allege a cognizable Fifth Amendment takings claim with regard to the interest generated by funds placed in IOLTA accounts.

The Plaintiffs cite two additional cases involving prison inmates as authority for the proposition that the client has a protectable property interest in the proceeds generated from funds deposited into an IOLTA account. In *Tellis v. Godinez,* 5 F.3d 1314 (9th Cir. 1993), *cert. denied* —— U.S. ——, 115 S.Ct. 354, 130 L.Ed.2d 309 (1994) a prisoner brought suit against prison officials alleging that they violated his due process rights by withholding interest earned on funds in his personal bank account. The Ninth Circuit recognized that the prisoner did indeed have a property right in the interest generated by his funds. However, the Ninth Circuit's holding must be read in the context of the relevant statute upon which the prisoner's claim was based. This statute provided that the interest and income earned on the money in the prisoner's trust fund must be credited to that fund *after* applicable charges were deducted. *Tellis,* 5 F.3d at 1316 (quoting Nev.Rev.Stat. § 209.241). Contrary to the Plaintiffs' argument, *Tellis* simply cannot be read as supporting the broader conclusion that a person has a protected property interest in interest generated from his or her funds, regardless of whether any net interest can ever be realized.

The Plaintiffs also cite the Fifth Circuit's opinion in *Eubanks v. McCotter,* 802 F.2d 790 (5th Cir.1986), another case in which prisoners sued prison officials alleging that their failure to pay the prisoners the interest generated by pooled inmate trust funds constituted a taking. The Fifth Circuit reversed the lower court, which had dismissed *sua sponte* the claim as frivolous. The Fifth

**11.** *See Cone,* 819 F.2d at 1007: "IOLTA programs do not amount to a taking because they create interest which was not within the reasonable expectations of any one of the principal amounts."

Circuit found that the prisoners' claims were "not wholly insubstantial or frivolous" and were "minimally sufficient to require a decision on the merits." *Eubanks*, 802 F.2d at 793–94. This, however, is the limit of the extent to which the Fifth Circuit recognized or endorsed the viability of these claims. *See Id.*, at 794. Thus, *Eubanks* applicability to the Plaintiffs' position is tenuous at best.

In scrutinizing the holdings and the underlying facts of both *Tellis* and *Eubanks*, it may be concluded that the prisoners were recognized to have property interests in the interest generated by their inmate trust accounts, but only after applicable charges were deducted. Accordingly, the Court finds that these cases, like *Webb's* and *Sellers* are inapposite.

*Fifth Amendment Protection of Plaintiffs' Expectation Interest*

██ The Plaintiffs alternately argue that, even if they lack a protected property interest in the generated interest, they have a protected property right to exclude others from the beneficial use of their funds while they are deposited in IOLTA accounts. In support of this purported right, the Plaintiffs rely primarily upon cases standing for the proposition that property owners may exclude others from their real, or tangible property. *See, e.g., Dolan v. City of Tigard,* —— U.S. ——, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (government requirement that property owner dedicate portion of property within flood plain for public improvements contrary to Fifth Amendment); *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (government regulation requiring private property owners to allow conduits for cable television to be attached even when property owners were not cable subscribers was an unconstitutional taking without just compensation); *Kaiser Aetna v. United States,* 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) (federal government's imposition of a navigational servitude on owners

of a private marina requiring that they allow a right of access to the public amounted to an unconstitutional taking). But, as noted, these cases all involve governmental intrusions or interference with real or tangible property. These cases do not recognize a similarly protected property right to control or exclude others from intangible property, and therefore are insufficient to support a finding that the Plaintiffs have a protectable property interest in the beneficial use of IOLTA-eligible funds.[12]

The Plaintiffs do correctly note that there are certain "intangible rights" that merit Fifth Amendment protection. *See, e.g., Lynch v. United States* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934) (valid contracts are property which cannot be taken without just compensation); *James v. Campbell,* 104 U.S. 356, 26 L.Ed. 786 (1881) (patents entitled to Fifth Amendment protection). However, inherent in these types of property is the necessity of excluding others to preserve the property interest. Accordingly, these cases fail to support the Plaintiffs' proffered analogy. *See Washington Legal Foundation,* 993 F.2d at 974 n. 10 ("[W]e do not finds analogous, intangible property rights which, by their nature or by agreement, require the exclusion of others to preserve the property interest).

To preclude summary judgment on the Plaintiffs' Fifth Amendment claims, the Court would have to find a genuine issue of material fact as to the operation of the IOLTA Program, the nature of the Plaintiffs property interest in interest generated by funds placed in IOLTA accounts, or the effect of the IOLTA Program on the generated interest. The Court finds that there is no factual dispute as to these issues, but only as to the characterizations of the client's property interests, all questions of law. Having resolved these questions in favor of the Defendants, the Court finds that the Plaintiffs' Fifth Amendment claims should be dismissed.[13]

---

12. *See Washington Legal Foundation,* 993 F.2d at 974.

13. The conclusion that the Texas IOLTA Program does not violate the Fifth Amendment is consistent with the holdings of numerous other decisions from other jurisdictions. *See, e.g., Cone, supra; Washington Legal Foundation, supra; In re Interest on Trust Accounts,* 402 So.2d 389 (Fla.1981); *Petition of Minnesota State Bar Association,* 332 N.W.2d 151 (Minn.1982); *Petition of*

## PLAINTIFFS' FIRST AMENDMENT CLAIMS

The Plaintiffs further claim that the collection and use of interest generated from funds clients place with their attorneys under the Texas IOLTA Program deprive the clients of their rights of freedom of speech and association guaranteed by the First Amendment.[14]

■ "It is well-established that the freedom of speech protected by the First Amendment includes the freedom to choose 'both what to say and what *not* to say.'" *Hays County Guardian v. Supple*, 969 F.2d 111, 123 (5th Cir.1992), *cert. denied* — U.S. ——, 113 S.Ct. 1067, 122 L.Ed.2d 371 (1993) (quoting *Riley v. National Federation for the Blind*, 487 U.S. 781, 797, 108 S.Ct. 2667, 2677, 101 L.Ed.2d 669 (1988)) (emphasis in original). The right to refrain from speech is violated when the government compels an individual to endorse a belief that he or she finds repugnant. *Id.* (citations omitted). It also may be violated when the government compels an individual to subsidize political and ideological purposes with which he or she disagrees. *Id.* (citing *Lyng v. Int'l Union, United Auto Workers*, 485 U.S. 360, 369, 108 S.Ct. 1184, 1191, 99 L.Ed.2d 380 (1988)); *Chicago Teachers Union Local No. 1 v. Hudson*, 475 U.S. 292, 301, 106 S.Ct. 1066, 1073, 89 L.Ed.2d 232 (1986); *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 234–35, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261 (1977).

■ Essentially, the Plaintiffs claim that their mandatory participation in the IOLTA Program forces clients to financially support, and thereby associate with, various recipient organizations whose purported objectives the Plaintiffs find objectionable.[15] However, at least as far as the client is concerned, such a claim is necessarily predicated upon the Plaintiffs' claim that the funds generated from the IOLTA accounts are, in fact, the property of the client. As determined in the preceding discussion regarding the Plaintiffs Fifth Amendment claims, the interest generated by the IOLTA program is not the property of any of the Plaintiffs, thus, the collection and use of the interest by the IOLTA program does not constitute financial support by the Plaintiffs of the recipient organizations.

Furthermore, the IOLTA Program in no way compels any of the Plaintiffs to actually associate or otherwise be linked with the recipient organizations that they find repugnant (e.g., by becoming members or being publicly listed as benefactors). Because the Plaintiffs have failed to adequately allege any connection between themselves and the IOLTA recipient organizations, the Court finds that the Texas IOLTA Program does not unconstitutionally burden the Plaintiffs' First Amendment rights. *See Washington Legal Foundation*, 993 F.2d at 980. *Compare Carroll v. Blinken*, 957 F.2d 991 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct,

*New Hampshire Bar Association*, 122 N.H. 971, 453 A.2d 1258 (1982); *In re Interest on Lawyers Trust Accounts*, 672 P.2d 406 (Utah 1983); *In re Interest on Lawyers Trust Accounts* 283 Ark. 252, 675 S.W.2d 355 (1984); *Petition of Massachusetts Bar Ass'n*, 395 Mass. 1, 478 N.E.2d 715 (1985); *Carroll v. State Bar of California*, 166 Cal.App.3d 1193, 213 Cal.Rptr. 305 (4th Dist.), *cert. denied sub nom. Chapman v. State Bar of California*, 474 U.S. 848, 106 S.Ct. 142, 88 L.Ed.2d 118 (1985).

14. The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people to peaceably assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The Fourteenth Amendment makes this limitation applicable to the States and to its subdivisions. *See Gitlow v. New York*, 268 U.S. 652, 45

S.Ct. 625, 69 L.Ed. 1138 (1925) and *Lovell v. Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

15. As noted *supra*, IOLTA Rules prohibit recipient organizations from using grants to fund lobbying or certain types of litigation. These limitations do not lead the Court to conclude that First Amendment issues have not been raised, despite the Defendants' contentions. Admittedly the collection and disbursement of funds appears to lack a First Amendment dimension. However, it is not disputed that the funds collected through IOLTA are awarded to meet the otherwise unmet needs for legal service of indigent Texans. The Supreme Court has recognized the expressive nature of litigation within the context of the First Amendment. *See Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991). Accordingly, the Court finds that there is expressive activity sufficient to invoke the First Amendment.

300, 121 L.Ed.2d 224 (1992) (compulsory student fees used to support statewide student advocacy organization, which automatically made all students members, impermissibly forced association in violation of the First Amendment).

■ The Plaintiffs also appear to contend that, even absent any financial link to the IOLTA Program, the mandatory Program forces attorneys to be associated with the TEAJF and its recipient organizations. It arguably could be said that the mandatory IOLTA Program forces attorneys to associate with these groups (albeit in an attenuated fashion). However, even if this were true, such compelled association does not give rise to a constitutional violation. In *Keller v. State Bar of California*, 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990), the Supreme Court considered a challenge brought by California attorneys regarding the use of the state bar's dues to finance certain ideological or political activities. The Court held that the bar's use of compulsory dues to finance activities having "political or ideological coloration" violated the First Amendment, *except* when such expenditures were reasonably or necessarily incurred for the purpose of regulating the legal profession or improving the quality of legal services available to the people of the state. *Keller*, 496 U.S. at 14, 110 S.Ct. at 2236; *see also Lathrop v. Donohue*, 367 U.S. 820, 843, 81 S.Ct. 1826, 1838, 6 L.Ed.2d 1191 (1961). The undisputed purpose of the IOLTA Program is to provide funding for legal services to a substantial segment of the population of Texas. This squarely fits within the purview of improving the quality of the legal service available to the people of the state as contemplated by *Keller*. Furthermore, the extent of an attorney's involvement with the IOLTA Program is merely handling his client's funds in a slightly different fashion than he would otherwise. There is no contribution of the attorney's own funds or his or her bar dues. Accordingly, the Court finds no constitutional infirmity with respect to attorneys' mandatory participation in the IOLTA Program.

Because the Court does not find that the IOLTA Program adversely impacts the Plaintiffs' rights either under the First or Fifth Amendment, the Court will not delve into extended First Amendment analysis regarding whether the Program is adequately tailored to serve the state's claimed interest. It suffices to say that providing indigent Texans with the means to gain access to the legal system is a significant state interest and the operation of the system imposes minimal burdens upon First Amendment rights of attorneys and their clients. *See, generally, Hays County Guardian v. Supple*, 969 F.2d at 122–24.

## ELEVENTH AMENDMENT AND 42 U.S.C. § 1983 IMMUNITY

The Defendants also argue that they are entitled to Eleventh Amendment immunity and that they are not "persons" for purposes of 42 U.S.C. § 1983.

### Eleventh Amendment Immunity

■ The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states. *Green v. State Bar of Texas*, 27 F.3d 1083, 1087 (5th Cir.1994) (*citing Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868, 1971, 109 L.Ed.2d 264 (1990)). Unless consent is given, the Eleventh Amendment forbids suit against a state, a state agency or department of the state by citizens of the state. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Suit is barred against a state entity regardless of whether money damages or injunctive relief is sought. *Clark v. Tarrant County, Texas*, 798 F.2d 736, 743 (5th Cir.1986); *Krempp v. Dobbs*, 775 F.2d 1319, 1321 (5th Cir.1985); *Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982).

■ In a suit challenging a rule of a state supreme court, the supreme court is the real party in interest if it has the ultimate authority to adopt and enforce the rule in question. *Lewis v. Louisiana State Bar Ass'n*, 792 F.2d 493, 497 (5th Cir.1986). In such an instance, moreover, an entity whose role is completely defined by the state supreme court, which acts as the agent of the court, occupies the position of a public agency for purposes of Eleventh Amendment analysis. *See Lewis v. Louisiana State Bar Ass'n*, 792

F.2d 493 (5th Cir.1986) (Louisiana Supreme Court and state bar association both entitled to Eleventh Amendment immunity from action by unsuccessful bar applicant's due process complaint); *accord Krempp v. Dobbs,* 775 F.2d at 1321. (Suit against Texas State Bar and State Commission on Judicial Conduct barred by Eleventh Amendment).

■ As noted above, the TEAJF was created by an order of the Texas Supreme Court in 1988, pursuant to the court's inherent power to regulate the practice of law in Texas. Pursuant to that order, the TEAJF has statewide authority to act and carries out its objectives on a statewide basis. Consistent with the logic of *Lewis,* the Court finds that the TEAJF is an arm of the Texas Supreme Court, and consequently the State of Texas, thereby entitling the TEAJF to Eleventh Amendment protection from all of the Plaintiffs' claims.

■ However, the Eleventh Amendment does not bar suits for injunctive relief against state officials. *Word of Faith World Outreach Ctr. v. Morales,* 986 F.2d 962, 965 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Accordingly, to the extent that the Plaintiffs' complaint seeks injunctive relief against the Chairman of the TEAJF, such claims are permitted under the Eleventh Amendment.

*42 U.S.C. § 1983*

■ A state official acting in his official capacity is not a person under § 1983 unless the relief requested in a suit against him in this capacity is prospective relief. *John G. and Marie Stella Kenedy Mem. Found. v. Mauro,* 21 F.3d 667, 671 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 577, 130 L.Ed.2d 493 (1994); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 & n. 10, 109 S.Ct. 2304, 2312 & n. 10, 105 L.Ed.2d 45 (1989). Accordingly, to the extent the Plaintiffs seek prospective relief against the Chairman of the TEAJF, Dean Frank New-

ton, such claims may proceed; however, any monetary relief is barred.[16]

## CONCLUSION

The Court declines to address the expressed social, political or public policy concerns related to the current operational procedures of the Texas Equal Access to Justice Foundation as it administers the IOLTA Program. Alleviation of these concerns rests with Texas attorneys and their relationship to the state bar, as well as the care of all Texas voters in the selection of their elected public officials.

Based upon the foregoing analysis, the Court finds that the Defendants' Motions for Summary Judgment should be granted, and the Plaintiffs' claims should be dismissed in their entirety. Further, the Court finds that the Plaintiffs' Motion for Summary Judgment should be denied.

**THEREFORE,** IT IS **ORDERED** that the Motion for Summary Judgment, filed by the Texas Equal Access to Justice Foundation on December 6, 1994, is hereby **GRANTED.**

**FURTHER,** IT IS **ORDERED** that the Motion for Summary Judgment, filed by the Supreme Court Defendants on December 6, 1994, is hereby **GRANTED.**

**FURTHER** IT IS **ORDERED** that the Motion for Summary Judgment, filed by the Plaintiffs on December 8, 1994 is hereby **DENIED.**

**ACCORDINGLY,** IT IS **ORDERED, ADJUDGED AND DECREED** that any and all claims brought by the Plaintiffs against the Defendants in the above-numbered and styled cause of action are hereby **DISMISSED WITH PREJUDICE.**

**FURTHER, IT IS ORDERED, ADJUDGED AND DECREED** that the above-numbered and styled cause of action is hereby **DISMISSED WITH PREJUDICE.**

---

16. The parties do not address whether the individual justices of the Texas Supreme Court are entitled to Eleventh Amendment Immunity or are persons for § 1983 purposes. However, the Court finds that were these issues before it, the same analysis would apply—i.e., the Plaintiffs claims for injunctive remedies may be sought against the individual Justices.

**FINALLY, IT IS ORDERED** that Clerk shall **TERMINATE AS MOOT** any motions that remain pending in this action.