In the Matter of the Petition of the MIN-
NESOTA STATE BAR ASSOCIATION,
a Corporation, FOR AMENDMENT OF
DR 9–102 AND 9–103, AND TO ENACT
A NEW DR 9–104 OF THE CODE OF
PROFESSIONAL     RESPONSIBILITY
RELATING TO TRUST FUNDS, AND
FOR ESTABLISHMENT OF A LAW-
YER TRUST ACCOUNT BOARD.

No. A–8.

Supreme Court of Minnesota.

Dec. 27, 1982.

ORDER AMENDING CODE OF PROFES-
SIONAL RESPONSIBILITY RELAT-
ING TO CLIENT TRUST FUNDS,
AND ESTABLISHING LAWYER
TRUST ACCOUNT BOARD

**Effective July 1, 1983**

WHEREAS, in the summer of 1981, the
Minnesota State Bar Association ("MSBA")

appointed a special Committee on Interest on Lawyers' Trust Accounts to analyze and make recommendations to the MSBA Board of Governors as to the possible use of interest to be earned on client trust account balances and the method of implementation of any such uses; and

WHEREAS, that Committee prepared a final report containing recommendations which were, except for minor revisions, approved by the Board of Governors of the MSBA on March 27, 1982; and

WHEREAS, the report and recommendations of the MSBA Committee were, after due notice to the membership, presented for consideration by the delegates and members of the MSBA at its annual convention assembled on June 19, 1982, and after debate, approved by a voice vote of the members in attendance; and

WHEREAS, pursuant to the approval obtained at the MSBA annual convention, the MSBA filed a petition with this court on July 1, 1982, requesting that the court amend the Code of Professional Responsibility to provide for a mandatory program relating to Interest on Lawyers' Trust Accounts in the State of Minnesota and providing for the establishment of a new Lawyer Trust Account Board to administer the program; and

WHEREAS, after due published notice in *Finance and Commerce, St. Paul Legal Ledger* and *Bench and Bar,* this court set a hearing on the MSBA petition before the court on October 8, 1982; and

WHEREAS, various parties, including representatives of the MSBA, and others, appeared to present their views personally to the court sitting *en banc* at the public hearing held on October 8, 1982, and the Court now having given due consideration to the proposals contained in the MSBA petition, and having considered legal briefs and correspondence from various persons, and the presentations by all interested parties desiring to be heard;

NOW, THEREFORE, IT IS HEREBY ORDERED that, effective July 1, 1983, Disciplinary Rules 9–102, 9–103 and 9–104 of the Code of Professional Responsibility be adopted as follows

[new material underscored; matter to be deleted lined through]:

## DR 9–102. Preserving Identity of Funds and Property of a Client

(A) All funds of clients paid to a lawyer or law firm other than advances for costs and expenses, shall be deposited in one or more identifiable bank interest bearing trust accounts maintained in the state in which the law office is situated as set forth in DR 9–103. and No funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds of the lawyer or law firm reasonably sufficient to pay bank service charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

## DR 9–103. Interest Bearing Trust Accounts

(A) Each trust account referred to in DR 9–102 shall be an interest bearing trust

account in a bank, savings bank, trust company, savings and loan association, savings association, credit union, or federally regulated investment company selected by a lawyer in the exercise of ordinary prudence.

(B) A lawyer who receives client funds shall maintain a pooled interest bearing trust account for deposit of client funds that are nominal in amount or expected to be held for a short period of time. The interest accruing on this account, net of any transaction costs, shall be paid to the Lawyer Trust Account Board established by the Minnesota Supreme Court.

(C) All client funds shall be deposited in the account specified in subdivision (B) unless they are deposited in:

(1) A separate interest bearing trust account for the particular client or client's matter on which the interest, net of any transaction costs, will be paid to the client; or

(2) A pooled interest bearing trust account with subaccounting which will provide for computation of interest earned by each client's funds and the payment thereof, net of any transaction costs, to the client.

(D) In determining whether to use the account specified in subdivision (B) or an account specified in subdivision (C), a lawyer shall take into consideration the following factors:

(1) The amount of interest which the funds would earn during the period they are expected to be deposited;

(2) The cost of establishing and administering the account, including the cost of the lawyer's services; and

(3) The capability of financial institutions described in subdivision (A) to calculate and pay interest to individual clients.

## DR 9–103. Required Books and Records; Required Certificate

(A) Every lawyer engaged in private practice of law shall maintain or cause to be maintained on a current basis books and records sufficient to demonstrate income derived from, and expenses related to, his private practice of law, and to establish

compliance with DR 9–102 and DR 9–103. The books and records shall be preserved for at least six years following the end of the taxable year to which they relate or, as to books and records relating to funds or property of clients, for at least six years after completion of the employment to which they relate.

(B) Every lawyer subject to DR 9–103 (A) shall certify, in connection with the annual renewal of his registration and in such form as the Clerk of the Supreme Court may prescribe that he or his law firm maintains books and records as required by DR 9–103(A).

IT IS HEREBY FURTHER ORDERED that, effective July 1, 1983, there is hereby created under supervision of this Supreme Court a new Lawyer Trust Account Board with its initial Rules to be as follows:

## RULE 1. COMPOSITION

The Lawyer Trust Account Board shall consist of six lawyers having their principal offices in this state, three of whom the Minnesota State Bar Association may nominate, and three public members resident in this state, all appointed by this Court to three-year terms except that shorter terms shall be used where necessary to assure that one-third of all terms expire each February 1st. No person may serve more than two three-year terms, in addition to any initial shorter term.

## RULE 2. POWERS AND DUTIES

(a) **General.** The Board shall have general supervisory authority over the administration of these Rules.

(b) **Receipt and investment of funds.** The Board shall receive funds from lawyers' interest bearing trust accounts and make appropriate temporary investments of such funds pending disbursement of them.

(c) **Disbursement of funds.** The Board shall, by grants and appropriations it deems appropriate, disburse funds for the tax exempt public purposes which the Board may prescribe from time to time consistent with

Internal Revenue Code Regulations and rulings, including those under Section 501(c)(3).

**(d) Records and reports.** The Board shall maintain adequate books and records reflecting all transactions, shall report quarterly to the Court, and shall report annually to the Minnesota State Bar Association and to the public.

### RULE 3.  OFFICERS

**(a) Chairperson.** The Board shall select a Board member to serve as Chairperson at the pleasure of the Board.

**(b) Other officers.** The Board may elect other officers as it deems appropriate and may specify their duties.

### RULE 4.  DIRECTOR

**(a) Appointment.** The Board may appoint an Executive Director to serve on a full or part time basis at the pleasure of the Board and to be paid such compensation as the Board shall fix.

**(b) Duties.** The Director shall be responsible and accountable to the Board for the proper administration of these Rules.

**(c) Services.** The Director may employ persons or contract for services as the Board may approve.

### RULE 5.  COMPENSATION AND EXPENSES

The Chairperson and other members of the Board shall serve without compensation but shall be paid their reasonable and necessary expenses incurred in the performance of their duties. All expenses of the operation of the Board shall be paid from funds the Board receives from lawyers' interest bearing trust accounts.

### RULE 6.  DISPOSITION OF FUNDS UPON DISSOLUTION

If the Lawyer Trust Account Board is discontinued, any funds then on hand shall be transferred to its successor state agency or organization qualifying under Internal Revenue Code section 501(c)(3), if any, for distribution for the purposes specified under Rule 2 or, if there is no successor, to the general fund of the State of Minnesota.

### RULE 7.  SUPPLEMENTAL RULES

The Board may make and adopt rules not inconsistent with these Rules to govern the conduct of its business and performance of its duties.

To assure that the program authorized by these rule changes will be ready for implementation on July 1, 1983, the effective date of this order,

IT IS HEREBY FURTHER ORDERED:

(a) That by April 30, 1983, the MSBA will report to this court as to compliance of the program with governmental regulations including the approval of the Board of Governors of the Federal Reserve System;

(b) That by April 30, 1983, the MSBA will report to this court on the status of administrative procedures that may be necessary to implement the program; and

(c) That the MSBA take such action deemed appropriate to it to publicize to all the lawyers of the state prior to July 1, 1983, the manner in which the Interest on Lawyers' Trust Accounts program will function.

Dated: December 13, 1982.

BY THE COURT
DOUGLAS K. AMDAHL
Chief Justice

### MEMORANDUM OPINION

This administrative proceeding was commenced by a petition on behalf of the Minnesota State Bar Association ("MSBA") seeking amendments to the Code of Professional Responsibility as applicable in the State of Minnesota and providing for the establishment of a Lawyer Trust Account Board. The petition addresses itself essentially to the provisions of Disciplinary Rule 9–102 of the Code of Professional Responsibility as it pertains to the maintenance of the funds of clients in identifiable bank accounts, *i.e.,* lawyers' trust accounts. Traditionally, such funds have been held in

trust by lawyers in a noninterest bearing checking account. This practice developed because of the general unavailability of interest-bearing demand accounts. However, as a matter of practice, individual sums of clients' money which are capable of generating significant amounts of interest are often deposited by lawyers in interest bearing savings accounts with the interest earned thereon, less the costs of maintaining the account, paid over directly to the client or credited to the client's account. In most cases, however, client funds are small in amount or held for brief periods and thus are presently maintained by each lawyer or law firm in its own so-called "pooled" noninterest bearing checking account. All client funds of a particular lawyer or law firm are deposited in such an account because such funds can be withdrawn for any one client's account upon demand consistent with the directions of the client.

In the summer of 1981, the Board of Governors of the MSBA appointed a special Committee on Interest on Lawyers' Trust Accounts to examine the impact of recent developments in banking law and computer technology which might make it possible to have interest accrue on accounts in which client trust funds were kept. That Committee, comprised of nine lawyers representing various types of law practices and geographic areas in the state, and three public members, was also charged with the responsibility of analyzing and making recommendations to the Board of Governors of the MSBA with respect to the appropriate use of interest that might be earned on deposits in lawyers' trust accounts.

The Committee prepared an extensive report which was submitted to the Board of Governors of the MSBA for consideration. With minor revisions, the Board of Governors approved the report and referred the recommendations to the state convention of the delegates and members of the MSBA. At the General Assembly session of the convention on June 12, 1982, the recommendations of the Committee report were approved by the MSBA convention.

In its report the MSBA Committee concluded that the practice in Minnesota of placing client funds in ordinary checking accounts where they would not draw interest was no longer sensible. There appeared to be a practical vehicle for recovering interest on such accounts through the advent of the negotiable order of withdrawal ("NOW") accounts generally available in Minnesota.

The experience in the Australian states and in the Canadian provinces, and now in several states in the United States, has demonstrated that interest on nominal deposits in trust accounts and on larger deposits held in trust for only a short period of time can be effectively captured and not lost if deposited into a lawyer's "pooled" checking account which pays interest. Organized bars in various Australian states and in the Canadian provinces were first to establish programs, first voluntary and now mandatory, that demonstrated the logic of capturing interest which cannot economically or practically be identified or paid to specific clients and allowing the interest to be used for various law-related, public purposes. *See England and Carlisle, History of Interest on Trust Accounts Program,* 56 Fla.B.J. 101, 102 (1982).

Several states have already taken action to provide for the handling of client trust funds in this manner. Leading in this effort in the United States has been the State of Florida. In that state, the Florida Supreme Court in 1978 approved of such a program. *In re Interest on Trust Accounts,* 356 So.2d 799 (Fla.1978). Thereafter, in order to comply with various requirements of the Internal Revenue Service ("IRS"), the program in Florida was revised in certain respects. *See Matter of Interest on Trust Accounts,* 372 So.2d 67 (Fla.1979); 402 So.2d 389 (Fla.1981). A voluntary program has now also been adopted by the Supreme Court of Idaho. Both voluntary and mandatory plans are also under consideration in other states at the present time as well.

In the State of California a mandatory program was enacted by legislation. See §§ 6210–6228 of Calif. Business and Profes-

sions Code. This Court has been advised that the California State Bar Association is presently in the process of promulgating regulations that would govern the procedures under the California mandatory interest on trust accounts program for all lawyers in the California integrated bar. The State of Maryland has likewise proceeded via the legislative route with a voluntary plan. See 1982 Md.Laws chs. 829, 830, codified at Md.Ann.Code art. 10, § 44 (1982).

■ Following its study and analysis of these and other interest on lawyers' trust account ("IOLTA") programs, the MSBA Committee recommended that where the amount of interest which client funds would earn during the period they are on deposit would exceed the cost of establishing and administering the account, including bank service charges and the cost of the lawyer's services, such funds should be maintained in a separate interest bearing trust account for a particular client or client matter with the interest, net of any transaction costs, to be paid or credited to the client. We agree with that recommendation since we believe that when larger sums of interest are involved that can more than cover administrative costs, bank fees and the like, such deposits should not lie idle but should draw interest for the benefit of the client.

■ The MSBA has demonstrated to this Court, however, that the relatively small amounts of interest to be earned on small deposits and on larger deposits held in trust for only a short period of time do not permit or warrant the establishment of a separate interest-bearing savings account for each of such deposits. The administrative costs of setting up such an account, accounting for such interest on a client-by-client basis, filling out the required IRS and state tax forms for taxing authorities and for the clients,[1] together with the cost of the lawyer's services in administering such accounts, present quite a different situa-

tion. We therefore conclude that under these circumstances, a pooled interest-bearing checking account from which client funds can be withdrawn on request and without delay is appropriate for such client funds. Since it is not possible as a practical matter to credit the interest to individual clients, we approve of the proposed concept of allowing such funds to be used for tax-exempt public purposes rather than to allow the interest to be lost.

■ We recognize that a question immediately arises as to how the attorney will determine which client funds are to be deemed "nominal in amount" or "held in trust for only a short period of time" so as to be placed in the pooled account. We also recognize that an attempt could be made to define such controlling terms, thereby removing entirely the judgment of individual lawyers who will be required to make such decisions. However, the new DR 9–103 which we have this date approved provides, in subparagraph (D), the criteria for the lawyer to use in making a judgment as to whether the client funds should be placed in the lawyer's pooled account with other similar client funds, or placed in a separate interest bearing savings account. We believe that setting out the general factors to be applied by lawyers in their best judgment is a better approach than developing specific definitions where the various parameters of administrative costs, bank fees, current interest rates and other influencing factors fluctuate or change from time to time. We therefore choose to follow the approach of the Florida Supreme Court which concluded that the determination of whether or not a client's funds are "nominal in amount" or "to be held for a short period of time" should rest exclusively in the sound judgment of each attorney or law firm, and that no charge of ethical impropriety or other breach of professional conduct should attend an attorney's good faith exercise of judgment in that regard. *See*

1. The court is aware of the 10% withholding of interest requirements of the new Tax Equity and Fiscal Responsibility Act, Pub.L. No. 97–248, § 301 (codified at I.R.C. §§ 3451–3456 (1982)), to become effective July 1, 1983. Such requirements would further complicate the paperwork and administrative burden involved in handling such accounts.

*Matter of Interest on Trust Accounts,* 402 So.2d 389 at 394 (Fla.1981). We likewise emphasize, as did the Florida Court, that the test must be the good faith judgment made by the attorney at the time the funds are received and deposited, and not as a result of hindsight reexamination based on how long the funds did in fact actually remain on deposit. *Id.* at n. 14. Obviously, an extreme violation of a lawyer's fiduciary duty to place a client's funds in a separate account for that client at interest amounting to gross neglect of a clients' funds would provide a basis for professional discipline.

Some have urged that the Court adopt an IOLTA program that is voluntary rather than mandatory, *i.e.,* that individual lawyers and law firms be given a choice as to whether to participate or not in such a program. The MSBA Committee felt strongly that if a program is to be adopted, it should be applicable to all Minnesota lawyers in order to accomplish its purpose. The membership of the MSBA approved that recommendation at the MSBA convention. Moreover, in a communication to the MSBA from the Director of the Florida IOLTA program, the Florida Director strongly urged that such a program, if adopted in Minnesota, be mandatory so as best to benefit the public through the additional funds that would be available for public purposes. We have concluded that, under all the circumstances, the MSBA's recommendation of a mandatory program should be adopted since the participation of all lawyers in this state will benefit the public at large to the maximum extent.

In some state jurisdictions, the subject of the constitutional base for an IOLTA program has been raised. This has been done in the context of the Fifth Amendment of the U.S. Constitution's protection of private property from a "taking" without just compensation. (*See also* Minnesota Constitution, Art. 1, § 13.)

2. The IRS approved the Florida program only after the Florida Supreme Court had determined that clients could in no way and to no degree control the creation or destiny of interest earned on the IOLTA program. *See* IRS

Another issue that has been raised in other jurisdictions is the Fifth Amendment's protection against deprivation of property without due process of law. (*See also* Minnesota Constitution, Art. 1, § 7.) We do not find that under the circumstances here the client has any "property" that is being taken without compensation or without due process of law under either the Fifth Amendment of the U.S. Constitution or under Article 1, §§ 13, 7 of the Minnesota Constitution. *See Matter of Interest on Trust Accounts,* 402 So.2d 389 at 395 (Fla. 1981). There simply is no "property" now in existence that would be taken.

Since we find that no client has a "property interest" which is being taken from him, in the constitutional sense, under this program, we see no need for a legal requirement of the lawyer to notify, in advance, clients whose deposits in lawyers trust accounts are nominal in amount or to be held for a short period of time.[2] We would suggest, however, that many, if not most, lawyers will, as a matter of good client relations and courtesy, want to notify their clients of their participation in this program in some manner, and we encourage them to do so.

Although our order provides the ethical basis for the IOLTA program in Minnesota, we note that the ABA's Standing Committee on Ethics and Professional Responsibility has issued a formal opinion indicating that there is nothing in the Code of Professional Responsibility that would prohibit a lawyer from participating in state-authorized programs that use interest earned on accounts in which are deposited client's funds, nominal in amount or to be held for a short period of time, and providing for the interest to be paid to certain tax-exempt organizations. *See* ABA Formal Ethics Opinion 348, July 23, 1982.

Revenue Ruling 81–209; 26 CFR § 1.61–7; England and Carlisle, *supra,* 56 Fla.B.J. 101 at 118–119; *Matter of Interest on Trust Accounts, supra,* 402 So.2d 389 at 390–391.

As far as we can determine, no other state has as yet adopted a plan that provides for a Board established directly under the supervision of the Supreme Court to receive, administer and disburse the funds generated by Interest on Lawyers' Trust Accounts programs. The MSBA has urged that a Board, operating under the jurisdiction of this Court, which has public members as well as lawyers, would best serve the public purposes for which the Board would be created. This newly created Board would hold the entire beneficial interest in the funds earned under the IOLTA program. We adopt that approach and do so having in mind that the purposes for which the funds generated by the program would be used will, as recommended by the MSBA, initially be limited to that of legal aid to the poor, law-related education, and projects to improve the administration of justice, to the extent the same are consistent with the Internal Revenue Code and regulations promulgated thereunder. *See* England and Carlisle, *supra*, 61 Fla.B.J. 101 at 103.

At the present time there are certain statutory and regulatory restrictions on the use of NOW accounts. Generally, such accounts may not be used by professional associations incorporated under Minnesota Law. These are a common form of law firm organization today. There are exceptions to the NOW account restrictions, however, when the beneficial ownership of the interest generated on such accounts rests in tax-exempt organizations which use the funds for charitable purposes consistent with the Internal Revenue Code and regulations of the IRS. It was on this basis that the Florida Bar Association received an opinion from the General Counsel of the Board of Governors of the Federal Reserve System, dated October 15, 1981, reprinted in Middlebrooks, *The Interest on Trust Accounts Program, Mechanics of its Operation,* 56 Fla.B.J. 115, 116–17 (1982), authorizing financial institutions in Florida to make NOW accounts available to law firms and attorneys in that state, regardless of their form of business organization, since the interest would inure to the benefit of an organization operated for charitable purposes. We recognize that a similar administrative approval may be necessary for the program which we hereby approve in Minnesota. There may be other aspects of the program which we here adopt which need to be approved by, or considered by, other administrative agencies or governmental departments. It is for that reason that our order approving the program recommended by the MSBA provides that the IOLTA program not be effective until July 1, 1983. During the intervening time, the MSBA will have the opportunity to lay the groundwork for implementing the program. We contemplate that appropriate interest-bearing accounts will be conveniently and reasonably available to lawyers throughout the state and that the MSBA will work co-operatively with financial institutions to work toward that goal.

We also are of the view that, as with any new program that breaks with the traditional practices of lawyers, there should be time permitted for the MSBA even further to publicize the program and to explain to all the lawyers in the State of Minnesota, and to the public, how the program will operate. For example, some opposition to the IOLTA program here adopted has been expressed on the grounds that it may require more paperwork and additional administrative burdens and costs for lawyers. It has been represented to the Court by the MSBA that the experience in Florida and in British Columbia has demonstrated that such is not the case. Since it is contemplated that the financial institutions will handle the computation of the interest, provide the Lawyers' Trust Account Board and the lawyer with the pertinent information, and pay over the interest to the Board, net of transaction costs, we see little change in the handling of trust accounts by lawyers in Minnesota under the new program from how they handle their trust accounts at the present time. However, to the extent that any problems arise in the preparation for the date of implementation, such problems should be reported by the MSBA to this Court so that such problems might be appropriately addressed.