Hon. Justin L. Vigdor Chairman, IOLA Fund Jonathan G. Blattmachr, Esq. Chairman IOLA Advisory Committee Interest On Lawyer Account Fund of the State of New York
I am writing in response to your letter requesting an Attorney General's opinion as to the constitutionality of the Interest on Lawyer Account Fund of the State of New York (IOLA).
IOLA was established by chapter 659 of the Laws of 1983. Traditionally, New York lawyers have utilized two types of accounts for deposit of client funds held in a fiduciary capacity. If the funds were large enough or held for a long enough period of time to accumulate a significant amount of interest, separate interest bearing accounts were established. Nominal amounts or large amounts held for short periods of time were co-mingled in non-interest bearing accounts. The IOLA legislation allows lawyers, if they choose to participate in the program, to place certain qualified funds (those nominal in amount, or those held for an insignificant period of time) into interest bearing accounts, with the interest generated going into the IOLA fund. The fund will then distribute this income to not-for-profit, tax exempt entities delivering civil legal services to the poor and utilize it for purposes of improving the administration of justice. The fund is administered by a fifteen-member board of trustees, all of whom are appointed by the Governor (see Judiciary Law, § 497; State Finance Law, § 97-v). As stated in your letter, thirty-four other American states have adopted programs similar to IOLA. The programs differ from state to state (Carrollv State Bar of California, 209 Cal.Rptr. 740 [Cal App, 4th Dist, 1984;Matter of Interest on Lawyers Trust Accounts, 675 S.W.2d 355 [Ark, 1984]; Matter of Minnesota State Bar Association, 332 N.W.2d 151 [Minn, 1982]; Matter of Interest on Trust Accounts, 402 So.2d 389 [Fla, 1981]).
In your letter, you ask that we address the constitutional issues raised in a report to the Board of Governors of the American Bar Association on these programs, and those raised in the decision upholding the constitutionality of California's Interest on Lawyer Trust Account (IOLTA) program, (Carroll, supra). The principal question that has arisen is whether New York's use of the interest on a client's funds constitutes an uncompensated taking of property, prohibited by the Fifth Amendment of the United States Constitution.*
Carroll involved a constitutional challenge to California's IOLTA program. The program is essentially the same as New York's except that participation by lawyers is mandatory (California Business and Professions Code, §§ 6210, et seq., 209 Cal Rptr at 745-746). California's IOLTA, like New York's IOLA, only contemplates the utilization of funds so small or held for so short a period that the prospective interest would be less than a lawyer's expense if he set up a separate account for these funds. Because of this limitation, the court in Carroll found that clients whose funds are deposited into these accounts would not expect to receive any interest income in the absence of IOLTA (id., at 747-748). IOLTA effectively creates income where there had been none before (ibid.). The court concluded that because no loss was involved, no prohibited taking had occurred under the Fifth Amendment (ibid.).
The American Bar Association report you ask us to comment on (AmericanBar Association Report to the Board of Governors, Advisory Board and TaskForce, Interest on Lawyer Trust Accounts, July 26, 1982) also addressesseveral Fifth Amendment issues raised in cases decided by theUnited States Supreme Court. Although New York courts and the United StatesSupreme Court have not yet ruled on the constitutionality of IOLAprograms, the Fifth Amendment consequences of a public taking of intereston privately-owned funds was addressed in Webb's Fabulous Pharmacies,Inc. v Beckwith (449 U.S. 155 [1980]). In Webb's, a Florida statute required that interest earned on interpleader funds deposited with the state circuit court accrue to the benefit of the state rather than to the owners of the funds. The Court found that the statute violated the taking clause of the Fifth Amendment, concluding that "[t]he earnings of a fund are incidents of ownership of the fund itself and are property just as the fund itself is property" (449 US at 164).**
The IOLA program, however, differs significantly from the circumstances in Webb's. In Webb's, the petitioner placed over $1.8 million dollars in an interpleader fund which was held in escrow by the court clerk. State law permitted the clerk to retain all interest earned on the funds held in escrow. The funds were held for over a year and generated over $100,000 in interest income. It was this interest that the petitioner sought to recover. The Supreme Court held that petitioner, as the interpleader, was entitled to the interest:
 "We hold that under the narrow circumstances of this case — where there is a separate and distinct state statute authorizing a clerk's fee `for services rendered' based upon the amount of principal deposited; where the deposited fund itself concededly is private; and where the deposit in the court's registry is required by state statute in order for the depositor to avail itself of statutory protection from claims of creditors and others — [the state assumption of] the interest earned on the interpleader fund while it was in the registry of the court was a taking violative of the Fifth and Fourteenth Amendments" (449 US at 164-165).
Significantly, in Webb's the fund was large and was held for a long period of time, unlike the funds eligible for use in IOLA programs. Furthermore, other statutory provisions provided for payment of the cost of the circuit court clerk's services out of principal. Thus, the interpleader fund was the property of one party, who had a reasonable expectation to receive the interest from it, unlike any one client's funds used in the IOLA program.
The Bar Association report also addresses Fifth Amendment issues raised by two Supreme Court cases, Loretto v Teleprompter Manhattan CATV Corp. (458 U.S. 419 [1982]) and Penn Central Transportation Co. v New YorkCity (438 U.S. 104 [1978]). In Teleprompter, the Court found violative of the Fifth Amendment a New York statute requiring landlords to permit installation of a television cable on rental property for use by tenants (458 US at 441). In Penn Central, however, the Court concluded that New York City's Landmark Preservation Law, which denied a real estate owner the right to construct an office building over Grand Central Terminal (a designated landmark) did not violate the Fifth Amendment (438 US at 138). These cases involved questions of whether an occupation of physical space, or the refusal to allow a certain use of property constituted an unconstitutional taking. Unlike IOLA, these cases involved the constitutionality of regulations restricting use of real property. IOLA uses interest income that would otherwise not exist if not for the program.
We conclude that the New York IOLA program's proposed use of interest does not constitute a taking of property violative of theFifth
Amendment. Like the California program evaluated in Carroll, we find that New York's IOLA will create interest where there was none before. Thus, no taking will occur.
In Carroll, the court also considered whether IOLTA violated the equal protection clause (US Const, Amend XIV). Petitioners asserted that clients who have no trust funds on deposit with a lawyer and clients whose funds are sufficient in amount and can be held in trust for a sufficient length of time to return a net profit, need not participate in the IOLTA program. Because of this, it was argued that those clients who are required to allow their money to be used are denied equal protection of the law (id., at 748-749). The court set forth the equal protection test: that in order to satisfy equal protection requirements, the legislative classification need only rationally relate to a conceivable, legitimate state purpose; those cases involving suspect classifications or touching on fundamental interests, however, must be strictly scrutinized (id., at 748). The court found that because no suspect classification or fundamental interest was involved, the program needed only to be rationally related to a legitimate governmental purpose. The classification under review was the decision to use only those clients' funds small in amount or held for short periods of time. There being no question that this classification of the client funds is rationally related to IOLTA's purpose, as they are the only funds that would not accrue sufficient interest to justify a separate account, it was concluded that the program did not violate equal protection (id., at 749). These same considerations being present in the immediate situation, we conclude that New York's IOLA program does not constitute a violation of the Equal Protection Clause.
The petitioners in Carroll also challenged the IOLTA program on the ground that it violated the Sixth Amendment right to legal counsel. The claim was that the program effectively imposed a tax on those who exercised their right to be represented by an attorney. This argument was rejected by the court in Carroll on the grounds that there was no showing that implementation of the program restricted access to representation by attorneys, or discouraged people from retaining lawyers. Because clients whose funds are used in the IOLA program are not denied any interest income they would have received in the absence of the program, it cannot be said they are being penalized or taxed in any way. We agree with theCarroll court, and conclude that the IOLA program does not violate a citizen's Sixth Amendment right to counsel.
Accordingly, we conclude that the IOLA program is not violative of the United States Constitution.
* The relevant language of the Fifth Amendment reads as follows: "nor shall private property be taken for public use, without just compensation". The prohibition is applicable to State governments through the Fourteenth Amendment (Penn Central Transportation Corp. v New YorkCity, 438 U.S. 104, 122 [1978]).
** In an earlier opinion, we concluded that the beneficial interest in IOLA accounts is owned by IOLA (OP Atty Gen No. 84-F7).