TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00254-CV






James W. Paulsen, Appellant



v.



State Bar of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. GN-000119, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING






 This is a case of first impression challenging the ethical viability of the Rules
Governing the Operation of the Texas Equal Access to Justice Program ("IOLTA Rules"), which
govern Interest on Lawyers Trust Accounts ("IOLTA accounts"). The IOLTA Rules dictate that
interest income generated by IOLTA accounts be remitted to the Texas Equal Access to Justice
Foundation ("the Foundation"), a Texas non-profit corporation. In Phillips v. Washington Legal
Foundation, the United States Supreme Court held that "the interest income generated by funds
held in IOLTA accounts is the 'private property' of the owner of the principal [the lawyer's
client]." 524 U.S. 156, 172 (1998). Following issuance of the Phillips opinion, James W.
Paulsen brought two challenges to the Texas IOLTA program. First, Paulsen sought a declaratory
judgment that he was not subject to professional discipline for failure to participate in the Texas
IOLTA program, pending definitive resolution of its constitutionality. We dismissed this cause
for lack of a justiciable controversy. Paulsen v. Texas Equal Access to Justice Found., 23 S.W.3d
42, 48 (Tex. App.--Austin 1999, pet. filed). Paulsen then withdrew from participation in the
mandatory Texas IOLTA program. The sanction for failure to comply with the mandatory IOLTA
program is suspension of the attorney's law license. The State Bar of Texas ("the Bar") refused
to grant Paulsen a good-cause exemption to mandatory participation and the district court upheld
that decision. Paulsen initiated this administrative appeal pursuant to the IOLTA Rules. IOLTA
Rule 25(d), reprinted in Texas Rules of Court, State 481, 485 (West 2000). We will affirm.


History of IOLTA Programs

 Lawyers are often in possession of client funds for use in legal transactions and are
required to keep these funds separate from their own. Tex. Disciplinary R. Prof. Conduct 1.14(a),
reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 1998) (State Bar Rules art. X,
§ 9). It has always been possible, and economically feasible, to deposit larger sums into separate
interest-bearing savings accounts for the benefit of the individual client. However, client funds
that are nominal in amount, or held for short duration, do not earn enough interest to offset the
bank fees and administrative costs of maintaining a separate savings account. Historically, lawyers
would pool these de minimus client funds into a single trust account that permitted withdrawal on
demand ("demand deposit accounts" or "DDAs"). This provided for efficient and convenient
management of, and access to, client trust funds for use in various transactions. Federal law
prohibited paying interest on DDAs, so financial institutions enjoyed free use of such funds. See
12 U.S.C. §§ 371a, 1828(g) (West 1989) & § 1464(b)(1)(B)(i) (West Supp. 2000).

 In 1980, Congress authorized the creation of interest-bearing accounts (Negotiable
Order of Withdrawal or "NOW accounts"), from which depositors can "make withdrawals by
negotiable or transferable instruments for the purpose of making transfers to third parties." Id.
§ 1832(a)(1) (West 1989). These interest-bearing NOW accounts are only available "with respect
to deposits . . . which consist solely of funds in which the entire beneficial interest is held by one
or more individuals or by an organization which is operated primarily for religious, philanthropic,
charitable, educational, political, or other similar purposes and which is not operated for profit." 
Id. § 1832(a)(2). For-profit corporations and partnerships cannot earn interest by means of NOW
accounts; however, their funds can be deposited into NOW accounts "if the funds are held in trust
pursuant to a program under which charitable organizations have 'the exclusive right to the
interest.'" Phillips, 524 U.S. at 161.

 Consequently, the states realized that client funds being held in non-interest bearing
DDAs, benefitting only financial institutions, could be pooled in NOW accounts to bear interest. 
When small and short-term sums were aggregated, the total could generate enough interest to
offset bank fees.(1) However, it was still impossible to generate net interest for the benefit of
individual clients. Assigning fractions of the interest to individual clients would cost more than
the interest earned. First, in addition to bank charges, clients would have to pay for the
accounting services needed to calculate the interest attributable to various sums on deposit for
staggered periods of time.(2) Second, interest remitted to clients is includible in the clients' gross
income and is subject to income tax. The costs of calculating and remitting IOLTA account
interest due to individual clients would thus eliminate any theoretical gain. However, the total
sum of interest earned on NOW accounts could benefit a single, non-profit beneficiary because
the attendant accounting expenses are reduced, and income taxes are eliminated. Accounting
expenses are reduced because the financial institutions remit the entire interest to one beneficiary,
for example, the Foundation. Washington Legal Found. v. Texas Equal Access to Justice Found.,
86 F. Supp. 2d 624, 641 (W.D. Tex. 2000). Income taxes are eliminated because no income is
realized if clients have no control over the disposition of the interest. Rev. Rul. 87-2, 1987-1
C.B. 18; Rev. Rul. 81-209, 1981-2 C.B. 16. Over the last nineteen years, IOLTA programs have
been created in forty-nine states and the District of Columbia to provide funding for indigent legal
services. In Texas, this program is known as the Texas Equal Access to Justice Program
("TEAJP").

 In 1984, the Texas Supreme Court created an IOLTA program in which lawyers
could voluntarily participate. In 1988, participation became mandatory, which resulted in a ten-fold increase in funds forwarded to the Foundation. The IOLTA Rules set rigid standards for
managing the TEAJP.


The Texas IOLTA Rules

 The IOLTA Rules dictate that the TEAJP be administered by the Foundation. 
IOLTA Rule 1. Lawyers licensed in Texas, who receive client funds that are "nominal in amount
or are reasonably anticipated to be held for a short period of time, must establish and maintain a
separate interest-bearing insured depository account at a financial institution and deposit in the
account such funds." IOLTA Rule 4 (emphasis added). The lawyer is instructed to "exercise good
faith judgment in determining initially whether client funds should be included in the Program." 
IOLTA Rule 6. The lawyer has no liability for any determination made in good faith in
accordance with the IOLTA Rules. IOLTA Rule 23. The guiding principle is whether "such
funds . . . could not reasonably be expected to earn interest for the client or if the interest which
might be earned on such funds is not likely to be sufficient to offset the cost of establishing and
maintaining the account, service charges, accounting costs and tax reporting costs which would
be incurred in attempting to obtain interest on such funds for the client." IOLTA Rule 6. The
account must be "a trust account from which withdrawals or transfers may be made on demand." 
IOLTA Rule 7.(3) All licensed lawyers are required to file an annual compliance statement with the
Foundation, reporting their IOLTA status. IOLTA Rules 5, 24.

 The Foundation holds "the entire beneficial interest in the interest earned." IOLTA
Rule 4. The Foundation is authorized to make grants only to qualified organizations, which must
have section 501(c)(3) status under the Internal Revenue Code, and a primary purpose of providing
legal services to individuals defined as indigent by the Foundation. IOLTA Rules 10, 11. 
Foundation grants cannot be expended on any matter that "might reasonably be expected to result
in payment of a fee for legal services" unless the indigent individual "has made reasonable efforts
to obtain the services of an attorney in private practice . . . and has been unable to obtain such
services." IOLTA Rules 13, 14. Thus, Foundation grants do not fund organizations that compete
with private lawyers for clients or fees. There are also restrictions on the types of cases that can
be funded.(4)

 The IOLTA Rules were adopted with consideration of the Texas Disciplinary Rules
of Professional Conduct ("Disciplinary Rules"), which require that "[u]pon receiving funds . . .
in which a client . . . has an interest, a lawyer shall promptly notify the client . . . . Except as
stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall
promptly deliver to the client . . . any funds . . . that the client . . . is entitled to receive." Tex.
Disciplinary R. Prof. Conduct 1.14(b). The IOLTA Rules do not prohibit a lawyer from
establishing interest-bearing accounts or other investments as permitted by the Disciplinary Rules,
with interest payable "as directed by clients for whom funds are not deposited in accordance with
these [IOLTA] Rules." IOLTA Rule 21. The IOLTA Rules explicitly state that the Foundation
and grant recipients cannot require any lawyer to take any action in violation of the Disciplinary
Rules. IOLTA Rule 22.


Ethical and Legal Challenges to IOLTA

 Even in their infancy, IOLTA programs were challenged. In 1982, the American
Bar Association issued a formal opinion dealing with the question of "whether the client has a
constitutionally protected property right in the interest earned on these client funds" and whether
lawyers could ethically participate in IOLTA programs. ABA Comm. on Ethics and Professional
Responsibility, Formal Op. 348 (1982), reprinted in ABA/BNA Lawyer's Manual on Professional
Conduct 801:114 (1986). This ethics opinion states as follows: 


 The Model Code does not establish whether it is ethically permissible for
lawyers to participate in these programs. In the opinion of the Committee,
however, the rationale for the ethical acceptability for these programs is the same
as the premise for acceptability in constitutional law and tax law. The client has
no right under the circumstances to require the payment of any interest on the funds
to himself or herself because the amount of interest which the funds could earn is
likely to be less than the appropriate charges for administering the earnings. The
practical effect of implementing these programs is to shift a part of the economic
benefit from depository institutions to tax-exempt organizations. There is no
economic injury to any client. The program creates income where there was none
before. For these reasons, the interest is not client funds in the ethical sense any
more than the interest is client property in the constitutional sense or client income
in the tax law sense. Therefore, assuming that either a court or a legislature has
authorized a program with the attributes described above and thus, either implicitly
or explicitly, has made a determination that the interest earned is not the clients'
property, participation in the program by lawyers is ethical. 



Id. at 801:119.

 Florida was the first state to adopt an Interest on Trust Accounts ("IOTA")
program.(5) One of the earliest challenges to the program was Cone v. State Bar, 819 F.2d 1002
(11th Cir. 1987), cert. denied, 484 U.S. 917 (1987). In Cone, a law firm inadvertently failed to
remit to the client the $13.75 balance left in a cost deposit account at the conclusion of
representation. The money was deposited into the firm's IOTA account, where it generated $2.25
in interest over a three-year period. When the firm discovered its error, it remitted $13.75 to the
client. She sued, claiming that the appropriation of $2.25 constituted an uncompensated taking
of private property in violation of the Fifth Amendment and a deprivation of her property without
due process. Id. at 1005. The Court of Appeals for the Eleventh Circuit observed that only "[b]y
combining all such deposits, interest income has been created which was not within the legitimate
expectations of the owner of any one of the principal amounts." Id. at 1007. The court concluded
that "appellant has no property interest in the interest" and upheld the constitutionality of the IOTA
program. Id.

 Prior to Phillips, cases examining IOLTA programs almost unanimously concluded,
as had the Eleventh Circuit, that interest earned on IOLTA accounts was not client property. 
Washington Legal Found. v. Massachusetts Bar Found., 795 F. Supp. 50, 53 (D. Mass. 1992),
aff'd, 993 F.2d 962, 976 (1st Cir. 1993); In re Massachusetts Bar Ass'n, 478 N.E.2d 715, 718-19
(Mass. 1985); In re New Hampshire Bar Ass'n, 453 A.2d 1258, 1261 (N.H. 1982); In re
Minnesota State Bar Ass'n, 332 N.W.2d 151, 158 (Minn. 1982); In re Interest on Trust Accounts,
402 So. 2d 389, 396 (Fla. 1981); but see Carroll v. State Bar, 213 Cal. Rptr. 305, 312 (Cal. App.
4th Dist. 1985), cert. denied, 474 U.S. 848 (1985). The Texas ethical opinion examining IOLTA
relies on the reasoning in these cases for its underpinning. Tex. Comm. on Professional Ethics,
Op. 421, 48 Tex. B.J. 208 (1985) (citing In re New Hampshire Bar Ass'n, 453 A.2d at 1258; In
re Minnesota State Bar Ass'n, 332 N.W.2d at 151; In re Interest on Trust Accounts, 402 So. 2d 
at 396). Public funding of indigent legal services has been drastically reduced and public debate
regarding how to fund indigent legal services has been heated. Because IOLTA programs have
been so successful, it has been relatively easy for courts to conclude that the de minimus sums
involved do not constitute client property. Washington Legal Found. v. Texas Equal Access to
Justice Found., 873 F. Supp. 1, 5 n.5 (W.D. Tex. 1995), aff'd in part, vacated in part, remanded
by 94 F.3d 996 (5th Cir. 1996), aff'd and remanded sub nom. Phillips v. Washington Legal
Found., 524 U.S. 156 (1998).


The Phillips Litigation


 By far, the most serious challenge to IOLTA, Washington Legal Foundation v.
Texas Equal Access to Justice Foundation, was filed in United States District Court for the
Western District of Texas in Austin. Id. In that case, the plaintiffs sought to establish three
propositions: (1) that the client possesses property rights in the interest derived from IOLTA
accounts; (2) that IOLTA violates clients' Fifth Amendment rights by taking their property; and
(3) that this taking is without just compensation. Id. at 5. The district court denied the claim on
the basis that the interest on IOLTA accounts was not the "property" of the client. Id. at 7. The
Court of Appeals for the Fifth Circuit reversed, holding that "any interest that accrues belongs to
the [client], unless they agree otherwise." Id., 94 F.3d at 1004 (footnote omitted).

 Petition for writ of certiorari was granted by the United States Supreme Court,
which answered only one narrow question: "[W]hether the interest on an IOLTA account is
'private property' of the client for whom the principal is being held." Phillips, 524 U.S. at 164
(footnote omitted). The Court's analysis relied heavily on "the rule that 'interest follows
principal.'" Id. at 165 (citation omitted). State courts have reasoned that IOLTA programs create
income where none existed previously, thus clients have no property rights to interest that would
be completely devoured by bank fees, accounting costs, and income taxes. The Supreme Court
rejected this reasoning and stated that "regardless of whether the owner of the principal has a
constitutionally cognizable interest in the anticipated generation of interest by his funds, any
interest that does accrue attaches as a property right incident to the ownership of the underlying
principal." Id. at 168. Finally, the Court held "that the interest income generated by funds held
in IOLTA accounts is the 'private property' of the [client]."(6) Id. at 172.

 The Phillips case was remanded, however, to the federal district court for
consideration of (1) whether IOLTA interest had been taken by the state; and (2) whether any
amount of just compensation was warranted. Id. On remand, the federal district court took up
each question separately and answered each in the negative. Washington Legal Found., 86 F.
Supp. 2d at 643, 647. The court examined three factors identified by the Supreme Court as
pertinent to whether there had been a taking. The court concluded that: (1) "the economic impact
of the regulation on Plaintiffs is nill"; (2) "Plaintiffs cannot hold a legitimate investment-backed
expectation of interest when funds placed in IOLTA cannot by definition earn net interest"; and
(3) "[t]he governmental action in this case does not implicate fundamental principles of 'justice and
fairness' because there is no cost to Plaintiffs." Id. at 646-47 (citations omitted). Furthermore,
the court observed that "[i]n determining just compensation, 'the question is what has the owner
lost, not what has the taker gained.'" Id. at 637 (citation omitted) (emphasis added). The client
testified that "he is no worse off because of IOLTA" and the court concluded that "Plaintiffs have
failed to present evidence of a loss." Id. at 643.


Paulsen's Challenge

 Following the Supreme Court's decision in Phillips, Paulsen concluded that
participation in IOLTA was a violation of the Disciplinary Rules. Specifically, he charged that
maintaining an IOLTA account violates the requirements of notification, delivery, and accounting
imposed on lawyers who receive client property. Tex. Disciplinary R. Prof. Conduct 1.14(b). 
Paulsen's contention is that when an attorney gets a statement from a financial institution reflecting
interest earned on an IOLTA account, at that point in time he has knowledge that his client has
received property. Further, participation in IOLTA requires the attorney to give his client's
property to the Foundation. This, Paulsen contends, he cannot ethically do. Paulsen withdrew
from IOLTA participation and gave notice of this fact to the Foundation in his 1999 IOLTA
compliance statement. The Bar gave Paulsen thirty days to comply with the IOLTA Rules, and
he sought an injunction from this Court. We denied his request. Paulsen, 23 S.W.3d at 48. 
Faced with imminent suspension of his law license, Paulsen applied to the Bar for a good-cause
exemption. The Bar's IOLTA review committee, and subsequently the State Bar's Board of
Directors, denied his request for an exemption. Paulsen appealed to the district court, which
upheld the denial of his request for an exemption. Paulsen appeals to this Court.


Discussion

 While this case presents issues that are of critical importance to the bench and bar,
Paulsen's appeal to this Court is actually controlled by fundamental principles of administrative
law. In order to successfully challenge the failure of the Bar to grant a good-cause exemption,
Paulsen must establish that the Bar acted in an arbitrary and capricious manner in denying his
request. See Board of Law Exam'rs v. Allen, 908 S.W.2d 319, 321 (Tex. App.--Austin 1995, no
writ) ("A court . . . must reverse or remand the agency's decision only if 'the administrative
findings, inferences, conclusions, or decisions are: . . . arbitrary or capricious or characterized
by abuse of discretion or clearly unwarranted exercise of discretion.'") (quoting Tex. Gov't Code
Ann. § 2001.174 (West 1995)). Additionally, the actions of the Bar must be judged against the
current state of the Texas IOLTA litigation. There has not yet been a final resolution of the
Phillips litigation. The most recent holding in that litigation comes from the United States District
Court and states that IOLTA does not result in a taking in the Fifth Amendment constitutional
sense. Washington Legal Found., 86 F. Supp. 2d at 647. Therefore, Paulsen has a very heavy
burden. He must establish first that the program is per se unethical. More importantly, in seeking
to overturn the Bar's decision to deny him a good-cause exemption from mandatory participation
in IOLTA, Paulsen must establish in this Court, on this record, that non-participation was his only
ethical remedy vis-à-vis his clients. This he has not done.


A.  Texas Ethics Opinion 421

 In 1984, the Texas Committee on Professional Ethics found that attorneys'
participation in the IOLTA program did not violate the Texas Code of Professional Responsibility
("the Code").(7) Tex. Op. 421 at 209 (9-0 decision). The opinion stated that the Code required
lawyers to segregate client funds from their own, "maintain complete records of client funds,
render appropriate accounts to clients, and promptly pay to the client as requested the funds which
the client is entitled to receive." Id. at 208. These requirements have not changed under the
Disciplinary Rules now in effect. Tex. Disciplinary R. Prof. Conduct 1.14(a), (b). The opinion
states without qualification that "[t]he interest earned [on client accounts] belongs to the client." 
Tex. Op. 421 at 208 (citing Tex. Comm. on Professional Ethics, Op. 404 (1981)). In this regard,
the opinion is in harmony with the Phillips holding. 524 U.S. at 172. However, the opinion also
relies on state court cases stating that "clients do not have a property right in the interest earned
on [IOLTA accounts]." Tex. Op. 421 at 208 (citing In re New Hampshire Bar Ass'n, 453 A.2d
at 1258; In re Minnesota State Bar Ass'n, 332 N.W.2d at 151; In re Interest on Trust Accounts,
402 So. 2d at 396). The opinion then paraphrases the above quoted language from ABA formal
opinion 348. Id. at 208-09.

 In general, it is true that the ABA and various state ethics opinions painted with a
broad brush in their analysis of whether clients have a property right in IOLTA interest. These
ethics opinions consider a trio of factors: (1) the de minimus sums involved; (2) the windfall
traditionally enjoyed only by financial institutions; and (3) the resolution of conflicts over funding
indigent legal services. The ethics committees and courts have engaged in a very pragmatic
analysis of the ethical and constitutional issues raised by IOLTA challenges. In practice, IOLTA
took from the banks and gave to the poor. Clients were no worse off than when banks used their
funds interest-free, and so their claims were dismissed rather summarily. In Phillips, the Supreme
Court has adopted a more rigorous, purist, constitutional approach to the resolution of the property
question. However, Phillips has removed only part of the underpinnings of Texas ethics opinion
421.

 Ethics opinion 421 is still in effect in Texas. It has been undermined, perhaps
severely, because of its reliance on the state cases overruled by implication, in some respects, by
Phillips. However, we emphasize that because the state courts concluded that there was no private
property involved, they never engaged in an analysis of whether there had been a constitutional
taking without just compensation. Neither has the United States Supreme Court. Phillips, 524
U.S. at 172. Texas ethics opinion 421 always assumed that "interest earned belongs to the client." 
Tex. Op. 421 at 208. This statement refers to the gross interest earned on client funds and is not
in conflict with Phillips in any regard. On remand, the United States District Court for the
Western District of Texas was the first court to analyze the question of whether there is indeed a
taking without just compensation. Washington Legal Found., 86 F. Supp. 2d at 647. The district
court's well-reasoned opinion shows us that reversal of the state court opinions regarding whether
IOLTA interest constitutes client property does not inexorably lead to the conclusion that there has
been a taking without just compensation. Id. The Supreme Court's narrow holding, that IOLTA
interest constitutes client property, has certainly undermined Texas ethics opinion 421, but we
regard opinion 421 as continuing to have ethical vitality.

 In addition, when deciding the preliminary question of whether IOLTA interest is
client property, the cases and ethics opinions relied heavily on the concept of net interest. They
concluded that because the gross interest generated by nominal or short-term funds would be
completely depleted by bank fees, accounting costs, and income taxes if remitted to clients, there
was no net interest in which the client could have a property interest. Although the Supreme
Court has dismissed this reasoning with respect to the question of whether IOLTA interest
constitutes client property, the district court's opinion on remand demonstrates that the concept
of net interest is still relevant in determining whether there has been a taking without just
compensation. If client funds cannot generate net interest for the client, the client has suffered no
loss, and thus no compensation is due. Id. at 643. If there is no taking without just compensation,
participation in IOLTA does not violate the Disciplinary Rules because the attorney is not
withholding from the client net interest income which the client would be "entitled to receive." 
Tex. Disciplinary R. Prof. Conduct 1.14(b); Tex. Op. 421 at 209.

 Further, Paulsen can cite to no ethics opinion saying that lawyers' participation in
IOLTA is unethical. Nor can he point to any final court proceeding in which IOLTA has been
held an unconstitutional taking of property without just compensation. Ethics opinion 421 still has
vitality and should guide lawyers in Texas. Therefore, we cannot say that participation in IOLTA
is per se unethical.


B.  IOLTA Rules and the Disciplinary Rules

 Paulsen cannot demonstrate that IOLTA participation is per se unethical; however,
he maintains that participation is unethical as he and his clients interpret Phillips. Assuming
without deciding that ethics interpretation is for each individual lawyer's conscience,(8) in our view
Paulsen must demonstrate that his nonparticipation in the IOLTA program is the only remedy for
his ethical dilemma.

 Annually, the Foundation reports to the Bar the name of every lawyer who is not
in compliance with the IOLTA Rules. IOLTA Rule 24(d). The Bar then notifies the lawyer that
he has thirty days to comply or risk immediate suspension of his law license by the Supreme Court
of Texas. Id. Suspension of the law license is vacated during administrative review and while any
suit is pending. IOLTA Rule 25(e). There is only one ground for exemption from IOLTA
participation for a practicing attorney who handles client funds. The IOLTA Rules provide as
follows:


Review and Appeal


(a) An attorney may file a written request based upon good cause for exemption
from compliance with any of the requirements of these Rules, an extension of
time for compliance, an extension of time to comply with a deficiency notice,
or an extension of time to file an annual compliance statement. . . .


(b) "Good cause" shall exist when an attorney is unable to comply with this Article
because of extraordinary hardship or extenuating circumstances which were
not willful on the part of the attorney and were beyond his or her control. 


 . . . . 


(d) . . . the burden of proof shall be on the attorney appealing, the burden shall
be by a preponderance of the evidence, and the attorney shall prove the
existence of "good cause" as defined herein. The trial court shall proceed to
hear and determine the issue without a jury. Either party shall have a right to
appeal.



IOLTA Rule 25 (emphasis added). Thus, to receive a good-cause exemption from compliance,
Paulsen must show either (1) extraordinary hardship, or (2) extenuating circumstances which were
not willful and were beyond his control.

 At the outset, the Bar argues, inter alia, that Paulsen's deliberate refusal to deposit
a check in his IOLTA account means that his noncompliance is willful; therefore, he is not eligible
for an exemption. Pursuant to this reading of the IOLTA Rules, any lawyer who deliberately
refused to participate, for any reason, would not be eligible for an exemption. We do not read
IOLTA Rule 25 so narrowly. The IOLTA Rule does not require that the failure to participate is
"not willful on the part of the attorney." The IOLTA Rule requires that the extenuating
circumstance preventing compliance is "not willful on the part of the attorney." On appeal, the
United States Supreme Court may eventually hold that IOLTA constitutes an unconstitutional
taking without just compensation. In such a case, if the Texas Supreme Court were to refuse to
amend the IOLTA Rules and the State Bar insisted upon compliance, a lawyer might deliberately
refuse to participate, yet be deserving of an exemption due to "extenuating circumstances which
were not willful on the part of the attorney and were beyond his or her control." However, at this
time, we have no such guidance from the United States Supreme Court. The question remains
whether the current circumstances actually prevent Paulsen's compliance.

 First, Paulsen argues that the Disciplinary Rules and IOLTA Rules are incompatible
and that an attorney cannot comply with both. The Disciplinary Rules impose the following duties
on lawyers handling client funds: (1) to maintain complete records of client accounts; (2) to notify
clients of receipt of funds; and (3) to promptly deliver to the client any funds he is entitled to
receive. Tex. Disciplinary R. Prof. Conduct 1.14(a), (b) (emphasis added). Paulsen states that
the IOLTA Rules "contemplate that an individual attorney will not notify the client of receipt of
IOLTA interest, will not maintain records of that interest, and will not pay that interest to the
client." Paulsen is correct, as far as this statement goes. The IOLTA Rules do contemplate that
an attorney need not take such steps, because no such duty is imposed on him by law or rule. 
However, the IOLTA Rules do not prohibit an individual attorney, whose personal ethics so
compel him, from giving notice to clients that their funds are held in an IOLTA account or from
maintaining records of IOLTA account activity. Although the interest will continue to be paid to
the Foundation, there is no conflict with the Disciplinary Rules. The Disciplinary Rules direct the
attorney to "deliver to the client any funds he is entitled to receive." Id. at 1.14(b) (emphasis
added). There is no authority for the assertion that clients are "entitled to receive" IOLTA interest. 
After deductions are made for bank fees and the lawyer's internal accounting costs, the client may
be "entitled to receive" only an IRS 1099 form indicating that income tax is due on the interest he
never actually received.

 Second, the IOLTA Rules direct participants as follows: "The attorney, law firm
or professional corporation should exercise good faith judgment in determining initially whether
client funds should be included in the Program and should review at reasonable intervals whether
changed circumstances require further action with respect to such funds." IOLTA Rule 6
(emphasis added). Attorneys should exercise this judgment to determine whether client funds
"could not reasonably be expected to earn interest for the client or if the interest which might be
earned on such funds is not likely to be sufficient to offset the cost of establishing and maintaining
the account, service charges, accounting costs and tax reporting costs which would be incurred." 
Id. At any point in time, if in the exercise of his good faith judgment, Paulsen can invest client
funds in such a manner that every client is "entitled to receive" interest, he is free, indeed
obligated, to do so. He could utilize separate NOW accounts, separate savings accounts, in-firm
pooling, or sub-accounting. Washington Legal Found., 86 F. Supp. 2d at 641. He would
therefore have no IOLTA account, and yet would still be in compliance with the IOLTA Rules. 

 Third, we believe the IOLTA Rules and Disciplinary Rules can be harmonized. 
The IOLTA Rules provide as follows: 


Participating in the Program does not prohibit an attorney, law firm or professional
corporation engaged in the practice of law from establishing one or more interest-bearing accounts or other investments permitted by the Texas Code of Professional
Responsibility (Article X, Section 9, State Bar Rules) with the interest or dividends
earned on the accounts or investments payable as directed by clients for whom
funds are not deposited in accordance with these Rules. 



IOLTA Rule 21 (emphasis added). The only provision in the Code (now the Disciplinary Rules)
for establishing interest-bearing accounts or other investments is Rule 1.14, which provides as
follows:


Safekeeping Property


(a) A lawyer shall hold funds . . . belonging in whole or in part to clients or third
persons that are in a lawyers's possession in connection with a representation
separate from the lawyers' own property. Such funds shall be kept in a
separate account, designated as a "trust" or "escrow" account, maintained in
the state where the lawyers' office is situated, or elsewhere with the consent
of the client or third person. . . . Complete records of such account funds and
other property shall be kept by the lawyer and shall be preserved for a period
of five years after termination of the representation. 



Tex. Disciplinary R. Prof. Conduct 1.14. Read together, IOLTA Rule 21 and Disciplinary Rule
1.14 permit an attorney to place client funds in a separate trust or escrow account or other
investment, with the interest earned on the accounts payable as directed by the client. We
conclude that these rules permit lawyers to make full disclosure to clients regarding the use of
IOLTA accounts and clients' property interest therein. Most fully informed clients will deliver
funds to their attorneys, happy to rely on the attorney's good faith judgment in determining
whether such funds belong in an IOLTA account. However, lawyers must invest client funds as
directed by their clients. If a client directs his lawyer to withdraw his funds from an IOLTA
account, the lawyer should do so and inform the Bar that he takes such action at his client's
insistence. The IOLTA Rules provide that lawyers cannot be compelled to take any action in
violation of the Disciplinary Rules. Because client funds are unquestionably client property,
investing such funds in a manner contrary to a client's instructions would be a violation of the
Disciplinary Rules and the lawyer's fiduciary duties.(9) 


CONCLUSION

 Because Paulsen cannot demonstrate that his unilateral and complete withdrawal
from the Texas IOLTA program was the only way to resolve his ethical dilemma, we hold that he
is not entitled to a good-cause exemption from mandatory IOLTA compliance and is subject to
sanction under the IOLTA Rules. IOLTA Rules 24(d), 25(b). We affirm the judgment of the
district court, upholding the decision of the State Bar of Texas. 



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Powers*

Affirmed

Filed: January 11, 2001

Publish











* Before John Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. Today, many banks waive all fees for IOLTA accounts. Washington Legal Found. v. Texas
Equal Access to Justice Found., 86 F. Supp. 2d 624, 641 (W.D. Tex. 2000). However, when
banks do charge fees for IOLTA accounts, the fees still sometimes exceed the interest earned. Id.
at 643 (reciting testimony that 46-47% of IOLTA accounts cause the Foundation to lose money).
2. For example, a solo practitioner testified in federal district court that "on average he keeps
the funds of 20-30 clients in his account in the amount of $20,000 to $30,000; that he keeps most
of the client funds in the account for 30 to 60 days." Id. at 640.
3. Lawyers "must attempt in good faith to locate an interest bearing account that would generate
interest greater than service charges" on IOLTA accounts. IOLTA Rule 4B, reprinted in Texas
Rules of Court, State 481, 482 (West 2000). As already noted, some banks do not waive service
fees for IOLTA accounts and in such cases, the fees can exceed the interest earned. See supra
note 1. If the lawyer is unable to locate an account that will generate interest in excess of service
charges, he is required to maintain a non-interest bearing client trust account. IOLTA Rule 4B.
4. "No funds shall be granted by the Foundation to directly fund class action suits, lawsuits
against governmental entities, or lobbying for or against any candidate or issue. Provided
however, that funds may be granted to finance suits against governmental entities on behalf of
individuals in order to secure entitlement to benefits . . . provided directly to indigent individuals." 
IOLTA Rule 15. 
5. Florida's IOTA program is similar to the Texas IOLTA program.
6. Thus, the Court impliedly overruled those state cases which found that IOLTA interest did
not constitute client property. 
7. Article 10, section 9 of the State Bar Rules (the Texas Disciplinary Rules of Professional
Conduct) was adopted and former article 10, section 9 of the State Bar Rules (the Texas Code of
Professional Responsibility) was repealed, effective January 1, 1990, by Order of the Texas
Supreme Court dated October 17, 1989. Paulsen indicated at oral argument that following the
United States Supreme Court's decision in Phillips, he requested a new ethics opinion on the
question. The Bar replied that as long as the litigation continues, there will be no new ethics
opinion. We note, however, that this is an indication that the present actions by Paulsen could be
considered premature, because the question of whether there is a constitutional taking without just
compensation has not been finally resolved. 
8. Each lawyer's own conscience is the touchstone against which to test the extent to
which his actions may rise above the disciplinary standards prescribed by these rules. 
The desire for the respect and confidence of the members of the profession and of the
society which it serves provides the lawyer the incentive to attain the highest possible
degree of ethical conduct. The possible loss of that respect and confidence is the
ultimate sanction. So long as its practitioners are guided by these principles, the law
will continue to be a noble profession. This is its greatness and its strength, which
permit of no compromise.


Tex. Disciplinary R. Prof. Conduct preamble ¶ 9, reprinted in Tex. Gov't Code Ann., tit. 2,
subtit. G app. A (West 1998) (State Bar Rules art. X, § 9).
9. It must be noted that lawyers would be remiss if they led clients to believe they will actually
receive interest on nominal or short-term funds. Clients must be made aware that exercising any
control over investment of these funds (i.e., directing their lawyer to never deposit their funds in
an IOLTA account, rather than allowing the lawyer to exercise his good faith judgment) subjects
the client to bank fees, accounting costs, and possible income taxation. This may actually result
in a net loss to the client.


fore Justices Kidd, Yeakel and Powers*

Affirmed

Filed: January 11, 2001

Publish











* Before John Powers, Senior Justice (retired), Third